Kirsch v. City of Abilene.

No. 26,794.

M. KIRSCH, *Appellant,* v. THE CITY OF ABILENE et al., *Appellees.*

No. 26,795.

P. W. HEATH et al., *Appellants,* v. THE CITY OF ABILENE et al., *Appellees.*

SYLLABUS BY THE COURT.

1. EQUITY—*Laches—Delay While Expenditures Made.* A party having rights may forfeit the same by laches in remaining passive and standing by while the adverse party makes large expenditures, incurs risks and assumes obligations, where such rights might have been asserted before the expenditures had been made, and the risks and obligations incurred. If the granting of relief would in consequence of the delay and the changed conditions work inequity the relief may be denied.

2. MUNICIPAL CORPORATION—*Construction of Building—Remedy of Taxpayers —Laches.* The city determined to erect a city hall and auditorium in a public park, and upon a proposition submitted the electors voted a large amount of bonds for the purpose of erecting a building in the park, which were sold to various parties and a tax levied by the city for a partial payment of the bonds, after which a building on the proposed site was razed at considerable expense. Plans and specifications were procured and contracts let for the construction and completion of the building, and large expenditures were made in the purchase of material for the building. Taxpayers who stood by while these things were being done, later brought an action to enjoin the erection of the building in the park, on the ground that such a building was inconsistent with the purpose for which the park was procured and used. *Held,* that although an action, if timely brought, might have been maintained, the delay of the plaintiffs in asserting their rights was unreasonable under the circumstances and constitute such laches as bars the relief they asked.

Appeal from Dickinson district court; CASSIUS M. CLARK, judge. Opinion filed April 10, 1926. Affirmed.

*C. W. Burch, B. I. Litowich, LaRue Royce,* all of Salina, and *E. S. Crawford,* of Abilene, for the appellants.

*George D. Bischoff, J. H. Agee, C. E. Rugh, Karl B. Rugh, Arthur Hurd* and *R. H. Seeds,* all of Abilene, for the appellees.

Equity, 21 C. J. pp. 172 n. 13, 193 n. 96, 231 n. 84, 232 n. 88; 20 R. C. L. 400. Injunctions, 32 C. J. pp. 68 n. 25, 73. n. 60. Municipal Corporations, 28 Cyc. pp. 945 n. 57, 1020 n. 1; 18 A. L. R. 1246.

The opinion of the court was delivered by

JOHNSTON, C. J.: In these actions, which were tried together and have been submitted together on appeal, one was brought by M. Kirsch, and the other by P. W. Heath and five other taxpayers, in which they asked that the city of Abilene and its officers be enjoined from erecting a city hall and auditorium on a block of ground previously acquired by the city and which has been used as a city park. The injunction was denied and plaintiffs appeal.

It appears that in 1888 the city purchased two lots on the northwest corner of the block in question, upon which a city hall was erected seventy-five feet in length and twenty-five feet wide. In July, 1903, the city purchased two adjoining lots immediately south of the city hall lots. In 1907, the alley north and south through the block was vacated at the instance of the city, and in the same year the electors of the city authorized the council to obtain the remainder of the lots in the block for a public park and the issuance of bonds of the city in the amount of $6,000 to pay for the lots. The bonds were voted and from the proceeds of the same the remainder of the lots in the block were purchased. About the year 1910, a public library was constructed on the south end of the block, the building being fifty feet by fifty-eight feet. Shortly afterwards a band stand was erected in the center of the block. In February, 1925, the city voted bonds in the sum of $125,000 for the purpose of erecting a new city hall and auditorium on the block. This building covers the four lots originally purchased by the city for city hall purposes and also 7,532 square feet of the land acquired for park purposes. After the voting of the bonds they were duly issued and sold and the proceeds of the same deposited with the city. A tax levy to provide for the payment of said bonds has been made upon the property of the city of Abilene, and the plaintiffs, who are citizens and residents of the city and are owners of real and personal property within the city, brought these actions, one on September 16, 1925, and the other three days later, asking for the injunction. About thirty days before their suits were begun a contract was let for razing of the old city hall building and the construction of the new one. The contract provided for the payment of about $1,000 for razing the old building, and one was entered into with the defendant Howard for the construction of the new one, the consideration of which was $99,030. Other contracts were entered

into for the electric wiring and plumbing of the new building, making a total contract price of the new structure of $113,000. The testimony was that the contractor had purchased materials for the construction of the building to the extent of $69,000 and it has been conceded that he is proceeding with the construction of the building since the contract was let, to the extent that the foundation has been built and the superstructure partly erected. No restraining order was obtained or asked for at the commencement of the suit by the plaintiffs.

The contention of the plaintiff is that a tract of ground set apart for a public park cannot be appropriated for use as a city hall and auditorium, and that the placing of the building thereon was unauthorized and unlawful. The contention of the defendant is that the plaintiffs had no standing or right to maintain the actions, that a building like the one in question, practically a community house, designed to be used for general municipal purposes, may properly be erected in a park, and would not constitute a diversion from the legitimate use of a park. It is further contended that if such use may be regarded as inconsistent with park purposes, the laches of plaintiffs, in that they did not earlier assert their rights and take earlier and appropriate action to prevent the city from proceeding with the building and the incurring of obligations and making of expenditures of large sums of money, bars the relief they have asked. We deem it unnecessary to determine the question of the propriety and right of the city to erect the city hall in the city park, upon which there is a division of the authorities, and assuming that the plaintiffs had a right to maintain injunction, we will pass to the interposed defense that the laches of plaintiffs bars the relief which they asked. They are invoking the jurisdiction of equity, and under the maxim that "he who seeks equity, must do equity," they are only entitled to such relief as is equitable and just under the circumstances. A court will grant such relief where conscience, good faith and reasonable diligence exists, and has been exercised, but where these are lacking the relief will be denied. (10 R. C. L. 395.) If a party sleeps on his rights or unnecessarily delays action until the rights of others have intervened, or conditions have been changed so that it would be inequitable to enforce the right asserted, relief will be denied on the ground of laches. If the plaintiff stands by and remains passive while the adverse party incurs risks, enters into obligations and makes large expenditures, so that by reason

of the changed conditions disadvantage and great loss will result to the adverse party which might have been avoided if the plaintiff had asserted his claim with reasonable promptitude, there are grounds for declining to grant the relief. (21 C. J. 231.) Here the nature of the right asserted and the relief sought required plaintiffs to move promptly. The city had the right to erect the city hall at some place within the city, and had undertaken in an open and deliberate way to provide the means and erect the building. The city commission took the initiatory steps by the passage of an ordinance submitting the question of voting bonds to the electors to pay for the erection of the building. That ordinance specifically provided that the bonds were to be used for the erection of a "city hall on the premises now occupied by the city hall." On April 7, 1925, the election was held and a majority of the votes were cast in favor of the proposition. By this vote the officers were directed to issue the bonds and proceed with the erection of the building in the park, and they did proceed at once to carry out the mandate of the electors. The plaintiffs, well knowing the action taken, sat still and allowed the officers to issue and sell $125,000 of bonds without asserting any claim that the action taken and proposed was invalid or that it would interfere with their rights. These bonds were sold and have passed into the hands of numerous persons who are not parties to this action. At once the city officers entered into a contract with parties to raze the old city hall, at a cost of about $1,000 and this work was nearly completed before the plaintiffs asserted their claim. The officers employed architects to make plans and specifications at a cost of about $3,000, and pursuant to these plans and specifications the city entered into a written contract with the defendant Howard for the construction of the building, for a consideration of $99,030. Other contracts were entered into for electric wiring, plumbing and the like, making a total contract price for the structure of $113,000. The contractor had purchased material for the construction of the building to the amount of about $69,000.

The persons with whom contracts were made for wiring and plumbing the building have not been brought into the case. The plaintiffs, as will be seen, stood by from April until September while the city under the instructions of the voters was disposing of bonds, wrecking a building, incurring large obligations, expending considerable sums of public money, and entering into contracts involving great amounts of money and levying a tax for payment of the bonds before they

asserted their claims. When they did bring the actions they did not ask for a temporary injunction or restraining order to prevent the officers from proceeding with the improvement, and it is conceded that the foundations of the city hall have already been constructed and a part of the superstructure erected. There has been such a change of conditions during the inexcusable delay of plaintiffs that the granting of the relief asked would be extremely prejudicial to the defendants and work great hardship and loss to the city and those with whom they had dealt. The plaintiffs are appealing to equity, and only such relief as will be equitable should be granted, and the relief they seek would result in such inequity that the court is not justified in overlooking plaintiffs' inaction and laches. While the duration of the laches was not for a long time, the nature of the case and the changing relations and conditions required the plaintiffs to act promptly in asserting their rights if any action was to be taken at any time. It has been held that—

"Laches does not, like limitation, grow out of the mere passage of time; but it is founded upon the inequity of permitting the claim to be enforced— an inequity founded upon some change in the condition or relations of the property or the parties." (*Galliher v. Cadwell,* 145 U. S. 368.)

Here the duration of the delay is not the controlling feature, but it is rather the unreasonable delay in asserting plaintiffs' claim. In *Commissioners of Morris Co. v. Hinchman,* 31 Kan. 729, 3 Pac. 504, it was said:

"It is a well-established rule in equity that if a party is guilty of laches or unreasonable delay in the enforcement of his rights, he thereby forfeits his claim to equitable relief." (p. 736.)

And there it was held that even if bonds were illegally voted, one guilty of laches could not question their validity in an action for injunction. In *Meistrell v. Ellis County,* 76 Kan. 319, 91 Pac. 65, an action was brought to enjoin the commissioners from carrying out a contract for the building of a bridge or the appropriation of public money to pay for the bridge, and it was held that where the plaintiffs who had a knowledge of the letting of the contract and remained inactive for months, until the greater part of the work was done and great expense had been incurred, an injunction would not be granted although there had been irregularities and invalidity in the letting of the contract and in the exercise of the authority conferred on the board. It was said:

48—120 Kan.

"The plaintiffs came into a court of equity asking a permanent injunction against the payment of the contractor for work which had been in progress for months, upon which a large amount of money had been expended, and when the contractor was not even a party to the action. Assuming that originally they had a right to interpose and enjoin, it has been forfeited by their silence and delay. The contract was let and the work was in progress for about six months before they made any complaint or took any steps to assert their rights. With a knowledge that the contract had been made, and that the bridge was being built, they stood silently by and suffered the contractor to make a special bridge to fit that crossing and to incur expenses and liabilities of a burdensome character. To allow them to enjoin a public improvement which would so seriously affect others after such inaction and delay would be grossly inequitable." (p. 323.)

In view of the changed conditions, the expenditures made and the risks and obligations incurred before plaintiffs asserted their rights, their delay is deemed to be unreasonable, and as the enforcement of the rights they assert would work inequity we conclude the injunction sought was properly refused.

The judgment is affirmed.

BURCH, J., not sitting.