## MISSOURI PUBLIC SERVICE CORPORA-TION v. FAIRBANKS, MORSE & CO. et al.*

### No. 10904.

Circuit Court of Appeals, Eighth Circuit.

March 7, 1938.

D. C. Chastain and Cyrus Crane, both of Kansas City, Mo. (A. Z. Patterson, of Kansas City, Mo., on the brief), for appellant.

Harry J. Fair, of Trenton, Mo., and Robert B. Fizzell, of Kansas City, Mo. (Russell N. Pickett, of Trenton, Mo., Poppenhusen Johnston, Thompson & Raymond, of Chicago, Ill., and Bowersock, Fizzell & Rhodes, of Kansas City, Mo., on the brief), for appellees.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

*Rehearing denied March 28, 1938.

**2**

SANBORN, Circuit Judge.

The Missouri Public Service Corporation (organized under the laws of Delaware on November 20, 1936), the owner of an electric plant and distribution system in the city of Trenton, Missouri, and engaged in furnishing electricity to the inhabitants of that city under what it claims is a perpetual, but nonexclusive, franchise, brought this suit in equity to enjoin the city, its officers, and others, from constructing a municipal electric plant and distribution system for the purpose of entering into competition with appellant. The complaint was filed December 21, 1936, and a preliminary injunction was granted January 25, 1937. The case was tried on March 2, 1937. On April 3, 1937, a decree dismissing the complaint and dissolving the preliminary injunction was entered, to become effective May 1, 1937. On April 9, 1937, the appellant appealed from the decree. No supersedeas was granted.

Under the Constitution and statutes of Missouri, the city of Trenton had the right to issue bonds for the purpose of building a municipal electric plant, if authorized by a two-thirds vote of its electors. Article 10, §§ 12, 12a, Missouri Constitution; and sections 7400, 7217–7221, Revised Statutes Missouri 1929, Mo.St. Ann. §§ 7217–7221, 7400, pp. 5836 et seq., 5928. In accordance with the laws of Missouri, by a vote of its electors the city was authorized to issue $250,000 of bonds to provide for the construction of an electric plant. Of the bonds authorized, $234,000 were sold by the city on June 26, 1936, to Baum, Bernheimer Company, one of the appellees, for $251,770. Prior to the commencement of this suit, the bonds had been resold by Baum, Bernheimer Company to its customers.

On August 6, 1936, the city, by ordinance, provided for the reception of bids for the construction and equipment of the plant and for notice that bids would be received. The notice required by the ordinance was published in a daily and a weekly newspaper in the city. The city had a population of 6,992. Publication was made in accordance with advice received from the office of the Attorney General of Missouri and as provided in the ordinance calling for bids. The notice did not contain the provision required by section 13320a of the Laws of Missouri, Laws 1931, p. 264,

Mo.St.Ann. § 13320a, p. 5171, reading as follows: "By virtue of statutory authority, a preference will be given to materials, products, supplies, provisions and all other articles, produced, manufactured, made or grown within the state of Missouri."

The notice was not published in two newspapers of the state having not less than 50,000 daily circulation, as required by section 13745, Revised Statutes of Missouri 1929, Mo.St.Ann. § 13745, p. 6519.

On September 2, 1936, bids were received and opened. The city accepted the bid of Fairbanks, Morse & Company for power equipment at a price of $119,543, and the bid of Matteson-Wallock & Company for the construction of the distribution system at a price of $96,935.24, and entered into contracts with these bidders on September 8, 1936. On or about November 27, 1936, the city awarded the contract for the erection of the power plant building to Ebbe Construction Company for a price of $44,466. The contractors proceeded to carry out their contracts.

This suit to enjoin the erection of the plant was commenced December 21, 1936. At that time the city had already expended $144,000.34 on account of the construction of the plant. The bonds which had been issued were outstanding. Fairbanks, Morse & Company had shipped substantially all of the power equipment to the city and had received a payment of $54,000 on account. The equipment which had actually been delivered at Trenton was of a value in excess of $100,000. The construction work was halted after the issuance of the preliminary injunction on January 25, 1937. After the entry of final decree and dissolution of the preliminary injunction on May 1, 1937, the work proceeded. At the time this appeal was submitted, the plant had been completed, accepted by the city, paid for, and was in full operation.

The appellees contend that the appeal has become moot, and have moved to dismiss it. The appellant insists that it has not become moot; that the city in completing the plant proceeded at its own peril; that there is left undisposed of the question of the liability of the appellant for damages under the bond which was given in connection with the issuance of the preliminary injunction; and that the

decree appealed from, if permitted to stand, might be regarded as an adjudication as to the validity of its franchise.

We shall assume, without deciding, that the case is not moot.

The court below reached the conclusion that the contracts for the construction of the municipal plant were unlawfully entered into because the city, in advertising for bids, had not complied with section 13745, Revised Statutes of Missouri 1929, Mo.St.Ann. § 13745, p. 6519; but that the plaintiff had no such interest as entitled it to the relief prayed for; and that its delay in attacking the validity of the contracts amounted to laches.

The appellant contends: (1) That the contracts for the construction of the municipal plant were void because of the failure of the city to comply with the law in advertising for bids. (2) That appellant, as the holder of a nonexclusive franchise and as a taxpayer, had the right to maintain this suit and was entitled to the relief prayed for.

■ The appellant, in contending that it has the right to maintain this suit and to have the relief prayed for, relies mainly upon the rule announced by this court in the cases of City of Campbell, Mo. et al. v. Arkansas-Missouri Power Co., 55 F.2d 560, and Arkansas-Missouri Power Co. v. City of Kennett, Mo. et al., 78 F.2d 911, in which the right of the holder of a nonexclusive franchise or permit, to protect itself, from unlawful competition was recognized and enforced.

In Northwestern Light & Power Co. v. Town of Milford et al., 8 Cir., 82 F.2d 45, it was held that a utility, the franchise of which had expired and which the town was then trying to oust from its streets, was without right to challenge the validity of a contract providing for the construction of a municipal electric plant. This ruling, if it were taken to mean that a utility lawfully engaged in furnishing electricity to the inhabitants of a city and in collecting revenues therefor, may not question the right of another to compete with it unlawfully, would be inaccurate. In People's Transit Co. v. Henshaw et al., 8 Cir., 20 F.2d 87 (cited with approval in Frost v. Corporation Commission, 278 U.S. 515, 521, 49 S.Ct. 235, 237, 73 L.Ed. 483), the receivers of a city railway system in Oklahoma City sought to enjoin the operation of certain buses in violation of a city ordinance. It was contended that the receivers had no such property interest as to justify the granting of equitable relief. This court said (page 90 of 20 F.2d): "It is very clear that the operation of buses in violation of the ordinance would directly affect the revenues of appellees. That is a vital property interest to them."

We are of the opinion that the appellant, whether it had the franchise which it claims or not, had an interest sufficient to enable it to maintain this suit in so far as it sought to enjoin the threatened competition which it claimed would be unlawful.

■ The decisions of this court upon which the appellant relies (City of Campbell, Mo. et al. v. Arkansas-Missouri Power Co., 55 F.2d 560, and Arkansas-Missouri Power Co. v. City of Kennett, Mo. et al., 78 F.2d 911), particularly when read in the light of what has been said recently by the Supreme Court in Alabama Power Co. v. Ickes, 58 S.Ct. 300, 304-306, 82 L.Ed. ——, do not authorize the granting of the relief prayed for. Those cases are to be regarded as cases in which this court reached the conclusion that, while the municipality had the right to enter into competition with the utility, the method adopted by the municipality to enable itself to exercise that right involved the doing of unlawful acts of a substantial and fundamental character so closely related to the proposed competition with the utility as to make such competition unlawful. In City of Campbell, Mo. et al. v. Arkansas-Missouri Power Co., supra, the municipality proposed to exceed its lawful debt limit in order to compete with the utility. In Arkansas-Missouri Power Co. v. City of Kennett, Mo. et al., supra, the construction of the plant involved an unlawful delegation of power by the city. It is unnecessary to reexamine our rulings in those cases.

Here the unlawfulness complained of amounts to little more than an irregularity in advertising for bids, which, so far as appears from the record, prejudiced no one. It was an irregularity which could readily have been corrected, if attention had been promptly called to it. A decree which would leave the city with a completed plant on its hands which it could never operate, merely because it had published its notices in the wrong newspapers

and had failed to include in its notices the matter required by section 13320a, could not be justified.

█ We are also of the opinion that at the time this suit was commenced, it was too late for the appellant, either as a tax-payer or as the holder of a franchise, to question the lawfulness of the contracts because of the form or manner of publication of the notice calling for bids. The city's position was by that time greatly changed. The contracts had been let, and in reliance thereon, materials had been delivered and labor performed. Large payments had been made by the city to the contractors. It was then impossible to restore the city and the contractors to the positions occupied by them when the contracts were entered into.

█ The doctrine of laches is not so much dependent upon time as upon circumstance. "Laches is an inexcusable delay in asserting rights. Mere lapse of time does not constitute laches. To wait an unreasonable time before seeking relief from a known wrong may amount to laches. It is to be determined by consideration of justice, and that is dependent upon the circumstances of each particular case." Des Moines Union R. Co. v. Des Moines Terminal Co., 8 Cir., 52 F.2d 616, 630. "The question of laches does not depend, as does the statute of limitation, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under all the circumstances of the particular case, plaintiff is chargeable with a want of due diligence in failing to institute proceedings before he did." Townsend v. Vanderwerker, 160 U.S. 171, 186, 16 S.Ct. 258, 262, 40 L.Ed. 383. In Kirsch v. City of Abilene, 1926, 120 Kan. 749, 244 P. 1054, the court held that tax-payers who, within thirty days after the time work was commenced, sought to enjoin the construction of a city hall and auditorium, were guilty of laches, where it appeared that bonds had been issued, contracts let, materials furnished, and work done prior to the bringing of suit. The court said (120 Kan. 749, 244 P. 1054, at page 1056): "The plaintiffs are appealing- to equity, and only such relief as will be equitable should be granted; and the relief they seek would result in such inequity that the court is not justified in overlooking plaintiffs' inaction and laches. While the duration of the laches was not for a long time, the nature of the case

and the changing relations and conditions required the plaintiffs to act promptly in asserting their rights, if any action was to be taken at any time." See, also, Mcistrell v. Board of Com'rs of Ellis County, 76 Kan. 319, 91 P. 65.

We think that the decree appealed from was right for the reasons stated, and it is therefore affirmed.