WILLIAM T. and LUCILLE P. HOLMES, Plaintiffs
v.
GOVERNMENT OF THE VIRGIN ISLANDS, Defendant
and
VIRGIN ISLANDS REFINERY CORPORATION,
Intervening Defendant

Civil No. 482-1973

District Court of the Virgin Islands

Div. of St. Croix

January 31, 1974

EVELYN N. COOPER, Christiansted, St. Croix, V.I., *for plaintiff*

VERNE E. HODGE, Attorney General, Charlotte Amalie, St. Thomas, V.I., *for defendant, Government of the Virgin Islands*

WARNER ALEXANDER, Christiansted, St. Croix, V.I., *for defendant refinery*

MARIS, *Circuit Judge, sitting by designation*

OPINION SUR MOTIONS FOR SUMMARY JUDGMENT

The plaintiffs, who are taxpayers of the Virgin Islands residing on St. Croix, brought the present suit on behalf of themselves and other taxpayers against the Government of the Virgin Islands seeking a judgment declaring that Act No. 3359, which was passed by the Legislature of the Virgin Islands on January 5, 1973 and approved by the Governor on January 10, 1973, is invalid, and asking for an injunction against action thereunder pendente lite. Act No. 3359 authorized an agreement between the Govern-

ment of the Virgin Islands and the Virgin Islands Refinery Corporation, a private corporation, for the building of an oil refinery on St. Croix and authorized special tax exemption, zoning and other changes in the law for the benefit of the corporation. The amended complaint was based upon the allegations that Act No. 3359 was a local or special territorial law in violation of 48 U.S.C.A. § 1471 and, in any event, that the Legislature was not legally in session when it was passed. The Virgin Islands Refinery Corporation has been permitted by this court to intervene as a party defendant.

The defendant and the intervening defendant have each moved for a summary judgment in their favor upon the grounds that the plaintiffs were guilty of laches in delaying bringing the suit for eight months after the enactment of Act No. 3359 and that, in any event, they do not have standing to maintain the suit. The motion has been fully argued and is now ready for disposition.

■ ■ I shall consider first the question of standing. In Smith v. Government of Virgin Islands, 4 V.I. 489, 329 F.2d 131, the Court of Appeals held that a taxpayer of the Virgin Islands has standing under 5 V.I.C. § 80 to maintain an action in the district court to restrain the illegal alienation of public property, the illegal expenditure of public funds or the illegal creation of public debt. The defendant and intervening defendant argue, however, that 5 V.I.C. § 80 authorizes only injunctive relief, while the present suit seeks a declaratory judgment. It may be a sufficient answer to this contention to note that the amended complaint asks for an injunction pendente lite. But regardless of that fact I am satisfied that a taxpayer in the Virgin Islands may maintain a suit in the district court for declaratory relief against illegal governmental action. As the Court of Appeals indicated in the Smith case, 5 V.I.C. § 80 is declaratory of the generally accepted common law

rule that taxpayers may sue for relief against illegal governmental action. Normally such relief takes injunctive form, as indicated in 5 V.I.C. § 80. However, frequently a declaratory judgment, supplemented, if necessary, by a coercive order, may be an appropriate and quite adequate remedy. It was doubtless for this reason among many others that the Uniform Declaratory Judgments Act was adopted for the Virgin Islands as a part of the Virgin Islands Code. 5 V.I.C. §§ 1261–1272. The enactment of that uniform act superseded the federal Declaratory Judgments Act, 28 U.S.C. §§ 2201–2202, which this court in Ottley v. DeJongh, 1957, 3 V.I. 229, 149 F.Supp. 75, had previously held applicable in the territory. Under the uniform act the court is expressly authorized to grant further relief based on a declaratory judgment, 5 V.I.C. § 1268, which may take the form of coercive relief, such as an injunction, and may be included in the declaratory judgment itself. 9A Uniform Laws Annotated, Declaratory Judgments, § 1 annotation 211, § 8 annotation 11. It may fairly be said, therefore, that implicit in a suit for declaratory relief is a prayer for supplemental injunctive relief, if necessary to protect the plaintiff's rights. Doubtless in many cases a judgment declaring governmental action illegal will itself have sufficient coercive effect to restrain further action by the public officers involved and thus render formal injunctive relief unnecessary.

■ ■ In either case, however, the action is, in my opinion, in substance and effect "an action to restrain illegal or unauthorized acts" within the spirit of 5 V.I.C. § 80. For that section is a remedial one, having the salutary purpose of affording to Virgin Islands taxpayers full and adequate relief from illegal actions of the territorial government and its officers. To construe it as authorizing only those suits whose primary prayer is for injunctive relief, strictly so-called, would surely be to exalt mechanically the narrow

letter of the statute over its spirit and intent. This the court should not do. 82 C.J.S. Statutes, § 325; 50 Am.Jur. Statutes § 302. I conclude that the plaintiffs have standing to maintain the present suit.

█ █ I turn then to the question of laches. The parties agree, and I hold, that the issue of the plaintiffs' laches may be determined on a motion for summary judgment. Hunt v. Pick, 10 Cir. 1957, 240 F.2d 782; 10 Wright & Miller, Federal Practice and Procedure, § 2734; 6 Moores Federal Practice, § 56.17[38]. The plaintiffs argue, however, that in an action equitable in nature, such as the present suit, even though the uncontroverted facts establish the plaintiffs' laches the defendants would not be entitled to judgment as a matter of law, but only in the discretion of the court. Seaboard Surety v. Racine Screw Co., 7 Cir. 1953, 203 F.2d 532, is cited as authority for that proposition. That case does indeed so hold but I think it was wrongly decided. Certainly it has not been followed and, on the contrary, has been widely criticized. Booth v. Barber Transportation Co., 8 Cir. 1958, 256 F.2d 927; Thickman v. Schunk, 1964, Wyo. 391 P.2d 939; Elias v. Manis, 1956, Tex. Civ. App., 292 S.W.2d 836; 6 Moores Federal Practice, §§ 56.01[1], 56.05; 10 Wright & Miller, Federal Practice and Procedure, §§ 2711, 2731, 2734. In the work last cited it is said [§ 2731, pp. 601–602]:

"The Seaboard Surety case has not been followed, nor should it be. One of the primary aims of the federal rules has been the elimination of procedural differences between actions that historically were brought 'at law,' and those initiated 'in equity.' Summary procedures to abort nonmeritorious litigation and avoid unnecessary expense and delay are important in equitable as well as legal actions. Thus if there really is no 'genuine issue of material fact,' the court should have the power to terminate the litigation on a summary judgment motion, rather than engage in a potentially costly trial. This particularly is true in light of the availability of modern discovery techniques, which, according to Rule 56(c) and Rule

56(e), can be used by litigants to obtain and present the information necessary to convince a judge of the propriety of granting or denying summary judgment.

"The availability of summary judgment in equitable actions also clearly is indicated by Rules 1 and 2, which establish the policy in favor of the expeditious completion of litigation and effect the unification of law and equity, as well as the original Advisory Committee Note to Rule 56, which stated that 'this rule is applicable to *all* actions' (emphasis added). Accordingly, there is no justification for differentiating between actions at law and suits in equity."

I conclude that if no genuine issue of material fact exists in this case and the uncontroverted facts establish that the plaintiffs were in the opinion of the court guilty of laches, the defendants will be entitled to judgment as a matter of law.

 The elements of laches which must be established in the present case are (1) delay on the part of the plaintiffs in bringing the suit, (2) the plaintiffs' knowledge of the facts and (3) resulting prejudice to the defendants if the suit is not barred. Annotation, Laches in Taxpayer's Action, 71 A.L.R.2d 529. Lapse of time is consequential only as the delay causes prejudice. Compare In re National Molding Company, 3 Cir. 1956, 230 F.2d 69. See also 27 Am.Jur.2d, Equity, § 163. It is inexcusable delay and resulting prejudice which are at the heart of the doctrine. With respect to these issues our Court of Appeals in Burke v. Gateway Clipper, Inc., 3 Cir. 1971, 441 F.2d 946, said (p. 949): "This Circuit requires the plaintiff to come forward and prove that his delay was excusable and that it did not unduly prejudice the defendant." To the same effect are Mroz v. Dravo Corp., 3 Cir. 1970, 429 F.2d 1156; Lipfird v. Mississippi Valley Barge Line, 3 Cir. 1962, 310 F.2d 639.

Upon consideration of the pleadings, admissions, affidavits and documents in this case I find that no genuine issues exist as to any of the following facts:

Bill No. 5588 to provide for the construction of an oil refinery and other related facilities on the island of St. Croix was considered by the Legislature of the Virgin Islands at various times during the year 1972. It was finally passed by the Legislature on January 5, 1974 and was approved by the Governor and became law on January 10, 1973, as Act No. 3359. Accounts of the consideration, passage and approval of the bill were published in the Virgin Islands newspapers. The Act authorized the Governor to enter into a contract with the Virgin Islands Refinery Corporation, the intervening defendant here, in the form set forth in an appendix to the Act. Under the proposed agreement the Virgin Islands Refinery Corporation was to undertake to construct an oil refinery on a tract of approximately 700 acres on St. Croix. The agreement provided, inter alia, for certain tax exemptions and subsidies and modification of zoning, building and other regulations for the benefit of the Virgin Islands Refinery Corporation.

Act No. 3359 contains the following legislative findings:

"(a) that it is essential to the continued progress, prosperity and stability of the Virgin Islands' economy that dependence on tourism be reduced through the establishment of additional industrial operations capable of providing and sustaining large scale employment and of contributing substantially toward a wider and more viable economic base for the Territory;

"(b) that the development and construction of an additional oil refinery and related facilities upon appropriate terms and conditions and with suitable safeguards, including provisions for local employment and ownership participation, for the furnishing of water and electric power to the people of the Virgin Islands and also including requirements for the use of advanced pollution control devices and methods, will promote the public interest and well-being of the people of the Virgin Islands;

"(c) that an energy crisis and clean energy fuel shortage exist throughout the United States, and that it is important to the United States as well as the Virgin Islands that additional refinery capacity for clean energy fuels, as authorized herein, be con-

structed in the Caribbean and particularly on United States territory;

"(d) that the Government of the Virgin Islands can be of assistance to the entire United States in meeting the aforesaid requirements, while offering great immediate and long-range benefits to the economy and prosperity of the people of the Virgin Islands by authorizing and facilitating the construction and operation of a new refinery, by the Virgin Islands Refinery Corporation, to be located in St. Croix;

"(e) that the advantages and benefits to the people of the Virgin Islands, to be directly derived from the undertakings proposed, fully warrant and require the cooperation, encouragement and assistance of the Government in this project."

The agreement authorized by Act No. 3359 was executed by the Governor and the Virgin Islands Refinery Corporation on January 10, 1973.

Plaintiff William T. Holmes knew on or about January 11th or 12th, 1973, that the Governor had signed the bill which became Act No. 3359 although he did not then know the details of the bill. Shortly thereafter he learned that a bill had been introduced in the Legislature to repeal the new law. Thereafter he learned that the repeal bill had been reported favorably by the committee of the Legislature to which it had been referred and had then been rereferred to the Rules Committee where it still rests. In April Senator Moorehead told Mr. Holmes that in his opinion the repeal would not become effective. Mr. Holmes, who had not previously obtained a copy of Act No. 3359, secured a copy through Senator Moorehead in April or early May. "Thereafter", Mr. Holmes deposed, "as time permitted, I did research on legal aspects of the bill, which I completed to my satisfaction in July of 1973."

Mr. Holmes further deposed as follows:

"At this time, I had determined Bill No. 5588 probably was a violation of 28 U.S.C. 1471, the statute Plaintiffs have relied on in their Complaint. But this decision alone was not to me determina-

tive of the necessity of bringing immediately or at all, a law suit to invalidate the Bill. At least two other factors had to be weighed if a cautious and reasonable decision was to be made with respect to my bringing such a suit as a Plaintiff.

"The first factor was a decision as to whether the Bill, as it existed, was sufficiently bad as compared to alternatives, so that an arrangement more favorable to the Government of the Virgin Islands might be expected if the Bill were declared invalid and an alternative plan were exposed to the public hearing requirements of the Virgin Islands Investment Incentive Act. I made a rough estimate of the tax subsidies and exemptions involved if there were a $100,000,000 plant earning pre-tax 10% on its total investment. . . .

"After this analysis, I finally concluded that responsible parties probably could be persuaded to build a refinery on St. Croix, with the Government allowing little or no subsidy, particularly in the context of that time, when lack of U.S. refining capacity was viewed as a major cause of the incipient energy crisis. This was so for two reasons. First, investigation disclosed that the states of Delaware and Maine had passed legislation allegedly for environmental reasons that had effectively closed two of the perhaps four to six deep water harbors on the east coast of the United States capable of servicing the new super tankers. Second, the fact that the 'American Flag' requirements of the Jones Act were not binding upon shipments from the Virgin Islands offered the probability of very large freight savings through the use of foreign flag shipments from a Virgin Islands refinery to the United States, savings not available to refineries located in the United States or in Puerto Rico.

"These two factors led me to conclude that a refinery site on the Virgin Islands had such a unique and important value that probably no subsidies would be necessary. This, though not necessarily a legal reason in support of bringing a suit, was a practical consideration in that the suit offered the possibilities of obtaining a major advantage for the taxpayers of the Virgin Islands.

"The second and most important factor for my not rushing in and bringing suit was the fear that the physical safety and mental comfort of my wife and myself might be jeopardized by such an action. There were indications of increasing community polarization following the Fountain Valley incident and the economic downswing that had struck St. Croix as a result of bad publicity seriously

affecting the tourist industry. Moreover, VIRCO's efforts, beginning early in 1973, in soliciting job applications at a time of increasing unemployment had aroused expectations of almost immediate relief among thousands of people. Clearly many of these people were among those most susceptible to economic and other pressures, and I expected that some of them would view such a lawsuit as a personal attack on their job opportunities.

* * *

"In summary, I did not know or have reason to know of the matters and things set forth in the Amended Complaint, especially the Refinery legislation's probable violation of 28 U.S.C. 1471, until July 1973, and between that time and September 12, 1973, when this suit was instituted, I gave diligent and thoughtful consideration to the filing of this suit, weighing both the possible advantages for the taxpayers in the Virgin Islands and the possible personal disadvantages to myself and my wife."

Mrs. Holmes deposed that she became aware in the middle of 1972 that there was a proposal for a new refinery on St. Croix and, later, that the Legislature had passed the bill and that the Governor had signed it. She further deposed that some time in late July or early August 1973 Mr. Holmes told her that he had concluded that the Refinery Act was illegal and that he was contemplating bringing suit. After discussion she urged him to do so and told him she would join him as a plaintiff.

The only actual knowledge which Mr. Holmes had of activities by the Virgin Islands Refinery Corporation between January 10, when Act No. 3359 was enacted, and September 12, 1973, when he and Mrs. Holmes filed the present suit, was through newspaper reports that the corporation was taking job applications in Christiansted and Frederiksted. However, he must have known as early as April or May, after he had obtained a copy of the Act, that the corporation was required, under the agreement annexed to the Act, to commence construction of the oil refinery within six months after having acquired the site of

approximately 700 acres, but in no event later than June 30, 1974. He, therefore, had cause to believe, as was the fact, that the corporation had entered into negotiations with various landowners and had probably made expenditures and commitments for the purchase of various parcels of land to be included in the refinery site, as well as expenditures and commitments with respect to other preliminary aspects of the project, the ultimate cost of which is estimated by the corporation to be in the order of $360,000,000.00.

There is no genuine issue as to the fact that such expenditures and commitments were actually made by the Virgin Islands Refinery Corporation during the period of nine months between January 10, 1973, the date of the enactment of Act No. 3359, and September 12, 1973, the date of the filing of the present suit. The only issues raised by the affidavits in this regard are as to the extent of these expenditures and commitments and these issues I do not reach on these motions for summary judgment since they are not material, admitted expenditures and commitments being adequate for the determination of these motions.

On these motions, I must confine myself to considering only the uncontroverted facts which are that during the nine months period in question the corporation engaged in substantial activities. It opened an office on St. Croix in March, recruited a staff, received and processed over 1,800 job applications, made various preliminary surveys, completed a study entitled "Human Resources in the Virgin Islands" comprising a study of the refinery manpower requirements and the availability of such manpower, and the formulation of a training program for refinery personnel. In addition the corporation was engaged during that period, as well as before and after it, in negotiating and contracting for the purchase of land to be included in the 700 acre refinery site. In connection with the activities other than

the acquisition of land the corporation expended during the period in question the sum of $526,587.00 and incurred liabilities in the sum of $1,180,500.00.

With respect to the refinery site, the corporation, pursuant to a previously granted option, entered into an agreement dated September 10, 1973 and an addendum dated September 12, 1973, for the purchase from Ralph A. DeChabert and others of approximately 356 acres of land for the sum of $9,890,000.00, of which $275,000.00 was paid during the period in question. Closing of the transaction was agreed to be on February 12, 1974. An agreement of November 17, 1972, amended March 9, 1973, provided for the purchase by the corporation from Co-Build Companies, Inc., of approximately 222 acres for $4,224,574.00 of which $150,000.00 was paid by the corporation on March 9, 1973. It thus appears that during the nine months period in question the corporation for the acquisition of approximately 578 acres of land for its refinery site expended $425,000.00 and committed itself to an additional liability of $13,689,574.00.

The plaintiffs argue that with respect to the land which the corporation has purchased it will not suffer economic damage through the invalidation of Act No. 3359 since that land is choice industrial land which can be resold for enough to recover its entire cost. There is no evidence on this question, however, except the affidavit of Ralph A. DeChabert who deposed that he and his co-owners of the 356 acre tract have been attempting to market it for the past several years and that the only firm offer received was that from the Virgin Islands Refinery Corporation.

 █ As I have pointed out earlier in this opinion the question presented by the defense of laches is whether there was inexcusable delay on the part of the plaintiffs in bringing their suit, after knowledge of the facts, which resulted in prejudice to the intervening defendant. A delay of nine

months is, in my opinion, unreasonable unless excused by lack of knowledge or notice or other extenuating circumstances. Here the active plaintiff, Mr. Holmes, had prompt knowledge of the passage of Act No. 3359, and knew that the Virgin Islands Refinery Corporation was proceeding with preliminary activities in the refinery project authorized by that Act. And in any event a man of his admitted business experience would be bound to know that to meet the deadlines of the Act preliminary acquisition of land and other activities would have to be started promptly in a project as large as this one. But it is clear from his own affidavit that he proceeded in a most leisurely fashion to obtain a copy of the Act, to study it and to decide whether to bring the suit. "As time permitted" he did research on the Act, taking about three months for the work. The unreasonableness of Mr. Holmes having taken so much time to consider the validity of Act No. 3359 from the legal standpoint is highlighted by the fact that the bill to repeal that Act, an amended version of which was introduced by Senator Bryant of St. Croix, a member of the bar, in March (Bill No. 5719) spelled out in detail exactly the same two grounds of invalidity upon which the plaintiffs relied in the present suit which they filed nearly six months later.

Moreover, Mr. Holmes took a month or more after reaching his legal conclusions to consider whether the Act was sufficiently bad, as compared to alternatives, to justify an attack on it in the hope of securing an Act which would provide a better deal for the Government and taxpayers of the Virgin Islands. Finally, he was concerned about the physical safety of Mrs. Holmes and himself because of community polarization following the Fountain Valley murders and the recession in St. Croix which followed. These, however, were conditions which existed in September, when he did bring suit, as well as in February or March, when the suit might have been brought. As early as

April Mr. Holmes learned from a member of the Legislature that the repeal bill would not pass. He then knew that the project would go forward unless stopped by legal action. But such action was not sought until September. I am constrained to find and I conclude that the plaintiffs have failed to prove that their delay in bringing the suit was excusable.

I have no difficulty in finding that the delay unduly prejudiced the intervening defendant, the Virgin Islands Refinery Corporation. For as we have seen during the nine months period between the passage of the Act and the institution of suit the corporation proceeded with the preliminary activities, notably the acquisition of land, necessary to get its refinery project in motion, expending $425,000.00 for land and $526,587.00 for other operational expenses and incurring liabilities of $13,689,574.00 for land and $1,180,500.00 in its other operations. This is a record of very substantial prejudice indeed, far greater than that disclosed in many of the cases which have upheld the defense of laches in similar situations. See Stern v. Mayor and Alderman of Jersey City (1930), 8 N.J. Misc. 307, 150 A. 9; Kirsch v. City of Abilene (1926), 120 Kan. 749, 244 P. 1054; Paine v. Wells (1918), 89 Ore. 695, 175 P. 430; Carver v. City of Camden (1909), 78 N.J.L. 293, 73 A. 47; Parker v. City of Concord (1902), 71 N.H. 468, 51 A. 1095; Board of Com'rs. v. Dickinson (1899), 153 Ind. 682, 53 N.E. 929; Fugate v. McNamara, 1892, 50 Mo. App. 39.

The Government of the Virgin Islands in support of its motion for summary judgment asserts that it, also, has been prejudiced by the plaintiffs' delay in bringing suit in that 53 other bills passed by the Legislature under the same legal circumstances as Act No. 3359 would be open to the same legal challenge as Act No. 3359 if the suit goes forward. Moreover, urges the Government, the legislative

goals spelled out in Act No. 3359 and quoted above have been severely retarded and delayed. These grounds I regard as indicating prejudice arising from the institution of the suit rather than from delay in bringing it. However, prejudice to the intervening defendant, The Virgin Islands Refinery Corporation, being clear, the inexcusable delay of the plaintiffs under the doctrine of laches bars as to both defendants the granting of the equitable relief which the plaintiffs seek in this action. Penn Mutual Life Ins. Co. v. Austin, (1898), 168 U.S. 685; Henry v. United States (3 Cir. 1931), 46 F.2d 640; 30A C.J.S. Equity § 118, fn. 30.

█ I need only add that, although I am aware that there has been, and continues to be, a strong division of public opinion on St. Croix as to the desirability of the refinery project which was authorized by Act No. 3359, this is not a subject which may be considered by the court in deciding the pending motions and I have not considered it. For it is basic to our constitutional system that the judicial branch of the government may not encroach on, or interfere with, the proper exercise of the powers which have been lawfully delegated to the legislative branch. By section 8(a) of the Revised Organic Act the authority and power of the Legislature of the Virgin Islands extends "to all rightful subjects of legislation" not inconsistent with the Act or the laws of the United States applicable to the Virgin Islands. The wisdom of a statute enacted under this broad grant of power is solely for the Legislature, as the representatives of the people, to decide, the function of the court being merely to determine whether the act violates any constitutional or statutory limitation upon the legislative power.

At the original hearing of these motions the intervening defendant in answer to a request of the plaintiffs for the production of certain documents produced the documents

for the inspection of the court alone in camera. The plaintiffs objected to their introduction in that manner. The documents were then enclosed in a sealed envelope and the court reserved judgment as to their disposition. Having concluded that these documents would provide merely cumulative evidence and that their disclosure might possibly be prejudicial to the intervening defendant, I have not examined or considered them in reaching my conclusions in the case. The clerk will retain them as originally sealed until the final disposition of this case and of any appeal, if taken.

 Since taxpayer's suits usually serve a very useful purpose and in the present case the merits of the controversy were not reached, costs and attorney's fees will not be assessed against the plaintiffs.

A summary judgment will be entered dismissing the complaint.