**CHASE MANHATTAN BANK, N.A., Plaintiff**

**v.**

**POWER PRODUCTS, INC., Defendant**

Civil No. 553/1988

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

July 6, 1992

CAROL S. MOORE, ESQ., St. Thomas, V.I., *for plaintiff*

W. MARK HILLSMAN, ESQ., St. Thomas, V.I., *for defendant*

SWAN, *Judge*

## MEMORANDUM OPINION AND ORDER

### INFORMATION

Defendant Power Products, Inc. ("Power Products") has moved the court for summary judgment against plaintiff Chase Manhattan Bank ("Chase"), pursuant to Rule 56(b) of the Federal Rules of Civil Procedure (5 V.I.C. App. I, Rule 56(b)) on the grounds that there exist no genuine issue of material fact, because Chase's claim for conversion and restitution is barred by the six (6) year statute of limitations for such claims. See, 5 V.I.C. 31(3)(D). Chase has filed opposing papers to the motion for summary judgment. For the reasons which follow, Power Products' motion for summary judgment is denied.

### FACTS AND PROCEDURE

On December 10, 1981, the Government of the Virgin Islands ("Government") deposited into its account with Chase the sum of $76,513.46, comprising of checks and cash. Chase erroneously credited the deposit to Power Products' checking account, which immediately resulted in an increase of $76,513.46 to Power Products' account.

Subsequently, and inexplicably, the Government failed to reconcile its accounts with Chase for more than six (6) years. Nonetheless, on August 19, 1987, employees of both Chase and the

Government met to discuss several business matters, including the reconciling of the Government's bank accounts. At that meeting, Chase was informed for the first time of the $76,513.46 shortage in the Government's account. After scrutinizing its records, Chase confirmed the error, reimbursed $76,513.46 to the Government and promptly demanded of Power Products that it repay the $76,513.46. Power Products has failed to do so. Therefore, on June 29, 1988, Chase filed this action for conversion and restitution of the $76,513.46 ("Funds").

## DISCUSSION

### A. Summary Judgment Standard

■ Rule 56(c) of the Federal Rules of Civil Procedure and 5 V.I.C. App. I, Rule 56(c) provide that summary judgment may be entered "after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). For its summary judgment motion, Power Products, the proponent, carries the initial burden of alerting the court that there are areas in the record which are lacking in a genuine issue of material fact. Celotex, 477 U.S. at 323. The burden then shifts to Chase to establish specific facts which show that there indeed does exist a genuine issue for trial. See, Rule 56(c), Federal Rules of Civil Procedure; See also, Gans v. Mundy, 762 F.2d 338, 342 (3rd Cir. 1985).

■ The Court is mindful that when ruling on a motion for summary judgment, all inferences made must be viewed in the light most favorable to the non-moving party, and any doubts are to be resolved in favor of the non-movant. See, e.g., Continental Ins. Co. v. Bodie, 682 F.2d 416, 438 (3rd Cir. 1982); Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3rd Cir. 1977). After a review of the record, this Court concludes that Power Products has failed to satisfy the requirements for summary judgment.

### B. Conversion

■ "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the

other the full value of the chattel." Restatement (Second) of Torts Section 222A.[1] Thus, conversion consists of the wrongful exercise of dominion or control over the property of another in a manner inconsistent with that of the owner's rights. See, Kline v. Khan, 20 V.I. 327 (D.V.I. 1983), citing, Life Ins. Co. of Va. v. Snyder, 358 A.2d 859, 862 (N.J. 1976). Also, the essence of conversion is not the acquisition of the property, rather it is the wrongful deprivation of that property. See, e.g., National Union Fire Ins. Co. v. Caribe Aviation, Inc., 759 F.2d 873, 878 (11th Cir. 1985). Consequently, the tort of conversion constitutes the exercise of wrongful dominion and control over the property to the detriment of the rights of its actual owner. See, e.g., Envases Venezolanos, S.A. v. Collazo, 559 So. 2d 651, 652 (Fla. 3rd DCA 1990), citing, Star Fruit Co. v. Eagle Lake Growers, 33 So. 2d 858 (Fla. 1948).

██ It is uncontroverted that money, which is personal property, may be the subject of a conversion. See, Knuth v. Eric-Crawford Dairy Cooperative Association, 326 F.Supp. 48, 55 (W.D. Pa. 1971), affirmed in part, reversed in part, 463 F.2d 470 (3rd Cir. 1972), cert. denied, 410 U.S. 913 (1973); Rosenthal Toyota, Inc. v. Jay M. Thorpe, Gold Key Leasing, Inc., John M. Mannone and John F. Troy, 824 F.2d 897, 902 (11th Cir. 1987), citing, Allen v. Gordon, 429 So. 2d 369 (Fla. DCA 1983); 551 Medical Services, Inc. v. Cox, 392 S.E. 2d 789 (S.C. 1990). More importantly, however, is that because a bank may have made a mistake and through its negligence mistakenly credited a depositor's account, the fact that the depositor acted deliberately rather than negligently in withdrawing part of the proceeds from his account, he therefore does not acquire a defense to the bank's conversion claim. See, e.g., Citibank v. Warner, 449 N.Y.S. 2d 822 (1981).

Equally indisputable is the fact that Power Products converted the Funds to its own use. However, the focus is when, or at what point in time, did the conversion occur. In support of its motion, Power Products asserts that the conversion occurred on or before February 11, 1982 and relies primarily on the accounting principle of "First In, First Out" (FIFO) to determine that particular date.

---

[1] The rules of the common law, as expressed in the Restatement of Law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States shall be the rules of decisions in the Courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary. 1 V.I.C. Section 4.

Essentially, Power Products argues that on December 9, 1981, its account had a balance of $23,206.74 and that the FIFO rule mandates that these first deposited funds in the account must be the first funds withdrawn from the account when checks are drawn against the account. Power Products further asserts that a review of the various bank statements issued by Chase for the period of December, 1981 through February, 1982 reveal that the pre-existing balance in its account of $23,206.74 was completely withdrawn or depleted by December 15, 1981. Accordingly, by applying the FIFO principle, the unavoidable conclusion is that Power Products began withdrawing the $76,513.46 from its account on or about December 16, 1981. Therefore, by adding the total "checks and other charges" debited to its account, as reflected on its bank statements issued by Chase for the period of December 16, 1981 through February 18, 1982, Power Products determined that funds totalling $76,513.46 was completely withdrawn from its account on or before February 11, 1982. Thus, says Power Products, it completely utilized the Government's $76,513.46 as of February 11, 1982. However, Power Products totally ignored and discounted the fact that it made numerous deposits to replenish the same account during the same period it caused checks to be drawn against its account. Significantly, however, is the fact that on June 29, 1982, exactly six years prior to Chase filing this suit, Power Products' account had a balance of $82,552.72 and as late as July 1, 1982, the same account reflected a balance of $80,660.34 both of which balances exceeded $76,513.46 (see plaintiff's Exhibit B2 attached to Chase's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment).

## C. Statute of Limitations

Power Products primary contention for seeking summary judgment is that because its tortious taking and converting of the funds occurred on or before February 11, 1982, Chase had until February 11, 1988, the expiration of the six year statute of limitations, to file an action for conversion. Consequently, when Chase filed this suit on June 29, 1988, says Power Products, the conversion claim was barred by the statute of limitations. The Court disagrees. Power Products' reliance on the FIFO accounting principle in a tort action for conversion is totally misplaced and without legal merit.

As long as Power Products was simultaneously depositing funds into its account and drawing checks against the same ac-

130

count and provided that there was money in the account to honor those checks, Power Products was utilizing its own funds. Therefore, no conversion could have occurred. One cannot commit an act of conversion against his own funds. It matters not what accounting principle Chase or Power Products utilized in their respective businesses. The crux of the matter is at what point in time did Power Products commence utilizing the $76,513.46 for its own use and benefit, because it is at that point in time the conversion occurred. More succinctly, when Power Products wrote the first check that overdrew its account and which check could not have been honored without utilizing a portion of the Government's $76,513.46, it was then that the conversion occurred.

In United States v. Hibernia National Bank, 882 F.2d 961 (5th Cir. 1989) the United States Army contracted with Rault Petroleum Corporation ("RPC"), owner of the Rault Center Hotel, to provide lodging for new army recruits. The Army subsequently issued a Treasury check to the hotel which contained two different figures. The correct amount of $24,844.50 was typed in the body of the check. However, the amount of $244,844.50 was entered in the right hand side of the check. RPC deposited the check in its account at Hibernia which resulted in a $220,000.00 overcredit to RPC. RPC gradually spent the overcredited funds between December, 1982 and September, 1983. The United States government sued Hibernia Bank and RPC for conversion. The bank in turn filed a cross-claim against RPC for fraud and conversion.

In its defense, RPC asserted that funds from other sources had been added to the account and commingled with the overcredit sum. Therefore, RPC was unsure which of the remaining funds in the account were due to the overcredit and which belonged to RPC. The court concluded that RPC converted the money in question to its own use when RPC's account balance fell below $220,000.00. Hibernia, 882 F.2d at 965, 966. This position is buttressed by Eagle v. Benefield-Chappel, 476 So. 2d 716 (Fla. 4th DCA 1985). In Eagle, plaintiffs Manny and Helen Eagle, contracted with defendant Benefield-Chappel, a decorating firm, to design and furnish a condominium unit. In addition to other payments, the Eagles made two $50,000.00 payments as furniture deposits. The deposits were made in advance of signing confirmations for the furniture so that the money could be cleared through the bank by the time the confirmations were signed. The Eagles objected to the confirmations, and

131

they were never signed. It was indisputable that the $100,000.00 payment was made for the expressed and sole purpose of ordering furniture and that no furniture could be ordered, nor could the funds be expended, without signed confirmations. No part of the money was spent for furnishings. Yet, when the parties terminated the contract, Benefield-Chappel refused to return the $100,000.00 to the Eagles. The Eagles subsequently sued Benefield-Chappel for a refund.

The trial court concluded that the Eagles had failed to prove that the corporate veil should be pierced or that Benefield-Chappel committed a conversion of the Eagles' funds. The Court noted that the money was not required to be kept in a separate account but could be, and was, commingled with the other funds. The court also concluded that Benefield-Chappel lacked the requisite intent to deprive the Eagles of their $100,000.00 because Benefield-Chappel was legally advised they had a claim which could have equalled the amount of the disputed $100,000.00, and Benefield-Chappel did not intend to permanently deprive plaintiff of the money in question.

The Appellate Court disagreed and held that the retention of funds belonging to the Eagles after termination of the contract constituted a conversion. More significantly, the Court found that a conversion occurred when Benefield-Chappel's account was depleted below $100,000.00. Eagle, 476 So. 2d at 718. Likewise, the conversion did not occur while the money was in the account. It took place when the money was disbursed without authorization. Allen v. Gorden, 429 So. 2d 369 (Fla. 1st DCA 1983).

Following the same rationale, the conversion in this case occurred when the balance in Power Products' account was depleted below $76,513.46. However, Power Products' bank statement for the period ending February 18, 1982 showed an account balance in excess of $90,000.00 (Exhibit D attached to defendant's motion for summary judgment). Therefore, as of that date, no conversion had occurred.

█ If this court were to apply Power Products' FIFO analysis, Chase would be barred from recovery because the "last dollar" of the funds would have been spent the day before February 12, 1982 even though there was sufficient funds in the account to allow Chase to debit Power Products' account directly and recoup the $76,513.46. Moreover, Chase could have done so without first mak-

ing a demand for the return of the funds. The generally accepted rule is that a demand and refusal are unnecessary where the action complained of amounts to a conversion regardless of whether a demand is made for the return of the property. Senfield v. Bank of Nova Scotia Trust Co., 450 So. 2d 1157 (Fla. 3rd DCA 1984).

■ Further, it is uncontested that an action for conversion is subject to a six year statute of limitations. See, 5 V.I.C. Section 31(3)(B); see also, Najman v. Machover, Civil No. 79/254 (D.V.I. March 12, 1982), affirmed without opinion, 709 F.2d 1493 (3rd Cir. 1983). Accordingly, Chase had six years from July 2, 1982, the date Power Products' account balance fell below $76,513.46 to file this lawsuit (See Exhibit B2 attached to plaintiff's motion in opposition for summary judgment). The record before the Court clearly reveals that Chase filed this action for conversion and restitution on June 29, 1988, which was within the statutorily mandated six year limitation.

■ Additionally, Chase seeks equitable relief by alleging that Power Products has been unjustly enriched in the amount of $76,513.46. On this issue, Title 5 V.I.C. Section 32(a) is instructive; it provides:

> (a) "An action of an equitable nature shall be commenced only within the time limited to commence an action as provided in this chapter."

As previously discussed, the statute of limitations on Chase's legal claim is six years. If Chase has satisfied the statute of limitations on its legal claim, and it has, it follows that its equitable claim cannot be barred.

Power Products also urges that Chase's claim is barred pursuant to the "discovery rule" of 5 V.I.C. 32(c) which provides:

> (c) "In an action upon a new promise, fraud, or mistake, the limitation shall be deemed to commence only from the making of the new promise or discovery of the fraud or mistake."

Power Products maintains that Chase had in its possession on December 11, 1981, sufficient documentation to alert Chase that a deposit of $76,513.46 had been mistakenly credited to Power Products' account. Therefore, says Power Products, Chase's failure to discover the mistake on December 11, 1981 does nothing to salvage Chase's conversion claim from the statute of limitations impediment. The Court again disagrees.

133

While Power Products may be correct in its contention that on December 11, 1981 Chase had the necessary documentation in its possession, there is nothing to suggest that Chase should have discovered the mistake. In fact, Mr. Wilfred Li, operations manager at Chase, testified that one would be unable to ascertain that the credit had gone to the wrong account by merely looking at the account number on the deposit slip, because it would have appeared to be a valid and correct account number. (See January 12, 1990 deposition of Wilfred Li, operations manager of Chase Manhattan Bank, pp. 44, 45, attached to defendant's motion for summary judgment as exhibit A). Unless there was something more specific to alert Chase to the error, it would not necessarily be easily discovered.

However, a review of Power Products account statements from December 1, 1981 through February 18, 1982 reflects no deposit greater than $10,000.00 with the exception of the $76,513.46. When Power Products received its monthly account statement which included this large sum, it had real and constructive notice that an error was made with its account for which it would be unjustly enriched if it utilized those funds. Therefore, considering the enormous and significant size of the $76,513.46 which appeared in several of Power Products consecutive monthly statements and which sum dwarfed Power Products' deposit at any one time of not more than $10,000.00, any claim by Power Products of being unaware of the presence of $76,513,46 in its account must be viewed with the proverbial jaundiced eye. Indeed, instead of notifying the bank of the error, Power Products proceeded to convert the $76,513.46 to its own use and now seeks the protection of the court to condone its deliberate and tortious actions. It matters not when Chase discovered the mistake, because "Persons who deal with a chattel or exercise acts of ownership over them do so at their peril, and must take the risk that there is no lawful justification for their acts." See Hibernia, 882 F.2d at 964.

Consequently, Chase's action for conversion is likewise not barred by the "discovery" rule of 5 V.I.C. Section 32(c). Moreover, there was no mechanism which would have readily alerted Chase of a deposit to the wrong account. However, as to discovery of the error, the same cannot be said of Power Products which was receiving monthly statements of its account.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the following: (a) That when Chase filed its action for conversion and restitution on June 29, 1988, its filing was within the six year statute of limitations, because exactly six years earlier there was more than $76,513.46 in Power Products' account and no conversion had occurred as of that date, and (b) That a conversion occurs when a depositor utilizes funds mistakenly deposited in its account and to which it has neither entitlement or ownership. Accordingly, Power Products' motion for summary judgment is denied.

## ORDER

ORDERED that Power Products' motion for summary judgment is hereby DENIED.

## ORDER

This matter is before the Court on Power Products' motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. (5 V.I.C. App. I, Rule 56 (b)). In accordance with the memorandum opinion of even date; it is hereby

ORDERED that defendant, Power Products' motion for summary judgment against plaintiff Chase Manhattan Bank, N.A., is DENIED.