**LAWRENCE OLIVE, individually and on behalf of the People of the Virgin Islands, Plaintiff**

**v.**

**JOHN P. DEJONGH JR., ELLIOT DAVIS, VINCENT FRAZER, LYNN, MILLIN MADURO, DARRYL SMALLS, and JULITO FRANCIS, Defendants**

Civil No. ST-09-CV-426

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

August 3, 2012

25

28

JEFFREY B.C. MOORHEAD, Jeffrey B.C. Moorhead, P.C., Christiansted, USVI, *Attorney for Plaintiff.*

CHAD C. MESSIER, Dudley, Topper and Feuerzeig, LLP, St. Thomas, USVI, *Attorney for Defendant deJongh.*

CAROL JACOBS THOMAS, TAMIKA M. ARCHER, V.I. Department of Justice, St. Thomas, USVI, *Attorney for Defendants Frazer and Davis.*

TRESTON MOORE, Moore, Dodson & Russell, P.C., St. Thomas, USVI, *Attorney for Defendant Millen Maduro.*

MARIA TANKENSON HODGE, Hodge & Francois, St. Thomas, USVI, *Attorney for Defendant Smalls.*

PAULA D. NORKAITIS, RICHARD P. FARRELLY, Birch, de Jongh & Hindels, P.L.L.C., St. Thomas, USVI, *Attorney for Defendant Francis.*

DONOHUE, *Presiding Judge*

## MEMORANDUM OPINION

(August 3, 2012)

THIS MATTER is before the Court on two motions to dismiss filed by Defendants Daryl Smalls and John P. deJongh, Jr. filed on March 2, 2010 and March 26, 2010, respectively. For the following reasons, the Complaint will be dismissed with prejudice as to all Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The six Defendants are or were officers and employees of the executive branch of the Government of the United States Virgin Islands. At the time of the actions alleged in the Complaint, Defendant John P. deJongh, Jr. was the Governor of the United States Virgin Islands; Defendant Julito Francis was the Executive Director of the Virgin Islands Public Finance Authority; Defendant Vincent Frazer was the Attorney General of the United States Virgin Islands; Defendant Elliot Davis was the acting Attorney General of the United States Virgin Islands; Defendant Darryl Smalls was the Commissioner of Public Works; and Defendant Lynn Millin Maduro was the Commissioner of Property and Procurement. The Complaint specifies that each Defendant is being sued "in his [or her] individual capacity only." (Compl. 1-2.)

The Complaint was filed on September 21, 2009, and alleges that Defendants conspired to defraud Virgin Islands taxpayers by converting public funds to private use in violation of the Restatement (Second) of Torts.[1] Specifically, Plaintiff alleges that Defendants used their positions to authorize the expenditure of over $350,000 to construct a security fence, guard house, parking lot, and to pave a driveway on Defendant deJongh's personal residence located at No. 23-9 Estate Mafolie on St.

---

[1] "The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." 1 V.I.C. § 4.

Thomas ("Property").[2] The Complaint alleges that Defendant deJongh orchestrated the conversion beginning with his decision to reside in his personal residence rather than in the Government House on St. Thomas during his incumbency. Plaintiff claims the decision was made as part of a scheme by Defendant deJongh to defraud Virgin Islands taxpayers. Defendant Davis, who was the acting Attorney General at the time, issued a legal opinion on January 22, 2007 justifying the use of public funds to improve Defendant deJongh's private residence.

After receiving Defendant Davis's legal opinion, Defendant Smalls, the Commissioner of Public Works, issued a request for bids for the construction contract. The contract for the guard house was awarded to WMK Mechanical Group, LLC for $82,142.80. A change order later increased the contract price to $102,577.80. A second contract was awarded to Better Roads Asphalt Corporation to construct a parking lot and pave a driveway for $156,160.00. Both construction contracts were signed by Defendants Millin Maduro and deJongh, and the contracts were approved for legal sufficiency by Defendant Frazer. Defendant Smalls signed only the contract with Better Roads Asphalt Corporation.

The contract with WMK Mechanical Group, LLC to construct the guard house expired pursuant to its terms on January 4, 2008, but the contract was reinstated for a period of two additional months. In June 2008, the type of fencing used for the security fence on the property was changed from aluminum to steel, and the contract was again awarded to WMK Mechanical Group, LLC in the amount of $98,829.00. In total, Plaintiff's Complaint alleges Defendants illegally authorized the expenditure of around $357,406.80 in public funds: $102,577.80 for the guard house; $98,829.00 for the steel security fence; and $156,000.00 for the driveway and parking lot construction.

Plaintiff further claims that Defendant deJongh violated Virgin Islands ethics and conflict of interest laws by authorizing the use of public funds to improve his personal property. Under Virgin Islands law, the Governor of the Virgin Islands also serves as the Chairman of the Board of Directors

---

[2] In his Memorandum of Law in Support of Motion to Dismiss filed March 26, 2010, Defendant deJongh disputes this fact, claiming that he actually owns No. 23-8 Estate Mafolie. Since the discrepancy has no bearing on the Court's ruling on this motion, the Court will assume the facts are correct as stated in Plaintiff's Complaint.

of the Virgin Islands Public Finance Authority ("PFA").[3] Plaintiff alleges that Defendant deJongh abused that position and authority by reprogramming $1,037,278.80 initially designated to the PFA for the improvements to Defendant deJongh's residence.

Plaintiff's Complaint alleges that the actions of Defendants constitute conversion in violation of the Restatement (Second) of Torts and the people of the Virgin Islands are entitled to reimbursement of all public funds that were spent to improve Defendant deJongh's private residence. Plaintiff claims that the actions of Defendants were done with reckless disregard for the rights of the people of the Virgin Islands and, therefore, punitive damages are appropriate. Plaintiff requests a trial by jury on all issues. Defendants have each filed an Answer denying the allegations in the Complaint.

On March 2, 2010, Defendant Daryl Smalls filed a Motion to Dismiss and an accompanying memorandum of law. Defendant Smalls argues that Plaintiff has failed to state a claim upon which relief can be granted and the Complaint should be dismissed pursuant Federal Rule of Civil Procedure 12(b)(6). Defendant Smalls argues (1) that an individual taxpayer does not have standing to sue to recover money on behalf of the government of the Virgin Islands; (2) that Plaintiff Lawrence Olive does not and cannot allege that he suffered any individual harm as a result of Defendants' actions; and (3) that Plaintiff fails to satisfy the elements of any viable cause of action for fraud or conversion. Defendant Julito Francis joined in Defendant Smalls' Motion to Dismiss on March 19, 2010.

On March 26, 2010, Defendant John P. deJongh, Jr. filed a Motion to Dismiss and an accompanying memorandum of law. Defendant deJongh argues that Plaintiff lacks standing to challenge the expenditures to improve the Property, but even if Plaintiff did have standing, the Complaint fails to state a claim upon which relief can be granted and the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant deJongh argues (1) that Virgin Islands conflict of interest rules do not provide a private right of action to individuals; (2) that Plaintiff's tort claims of fraud and conversion fail because Defendants are immune from civil suit, because Plaintiff did not

---

[3] 29 V.I.C. § 919.

comply with the Virgin Islands Tort Claims Act, and because Plaintiff did not plead facts showing entitlement to recover under those causes of action; and (3) that Plaintiff's taxpayer suit under Title 5, Section 80 of the Virgin Islands Code fails because Plaintiff seeks monetary damages, Defendants were sued in their individual capacities, and the improvements made to the Property were not illegal, unauthorized, or wrongful.

The Court issued an Order dated May 14, 2012 giving Plaintiff twenty (20) days to respond to the motions to dismiss. Plaintiff's Response to Defendants' Motion[s] to Dismiss dated June 6, 2032 was not filed until June 13, 2012. Defendants deJongh and Smalls each filed a Reply to Plaintiffs Response on June 14, 2012.

## II. DISCUSSION

■ As an initial note, the Court recognizes that materials filed concurrently with the pleadings are sufficient to convert a Rule 12(b)(6) motion to dismiss to a Federal Rule of Civil Procedure 56 motion for summary judgment. FED. R. CIV. P. 12(d). Defendants Smalls and deJongh both filed memoranda in support of their motions to dismiss. Defendant deJongh also included an attachment[4] to his motion to dismiss, and Plaintiff included an attachment to the response.[5] The supplemental memoranda filed by Defendants Smalls and deJongh in support of the motions to dismiss are essentially legal briefs, which are not included as "matters outside the pleadings" and do not trigger conversion. *Donastorg v. Virgin Islands*, 45 V.I. 259, 266 (Terr. Ct. 2003). The memoranda discuss the legal sufficiency of the Complaint, and do not address the factual merits of Plaintiff's claims. Regarding the attachments, the Court will exercise its discretion to not to accept materials beyond the pleadings that are offered in conjunction with the motions to dismiss since neither of the attachments are sufficient to enable a rational determination of a summary judgment motion and conversion is not likely to facilitate the disposition of the case. *Id.* Therefore, the

_____

[4] The attachment was a copy of a newspaper article: David M. Halbfinger, *Governors Don't Call This Home*, N.Y. Times, Nov. 19, 2009.

[5] The attachment was a copy of a report: U.S. Department of Interior: Office of Inspector General, *Security Improvements at Governor of the Virgin Islands Private Residence*, Report No. VI-IS-VIS-0004-2009, Jan. 2010.

Court will not convert Defendants' motions into Rule 56 motions for summary judgment. *Id.* (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to have a claim dismissed "for failure to state a claim upon which relief can be granted."[6] The adequacy of a complaint is governed by Federal Rule of Civil Procedure 8, which provides the general rules of pleading. The United States Supreme Court held that under Rule 8, a complaint must set forth a plausible claim for relief *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The Virgin Islands Supreme Court clarified the proper standard for evaluating motions to dismiss for failure to state a claim: "a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." *Robles v. HOVENSA, L.L.C.*, 49 V.I. 491, 501 (2008) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)). "A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481 (3d Cir. 2000). However, although the court is required to accept as true all factual allegations in the complaint, the court does not need to "accept as true unsupported conclusions and unwarranted inferences." *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).

Under this standard, the court must undertake a three step analysis to determine whether a complaint states a plausible claim for relief:

> First, the court must take note of the elements a plaintiff must plead to state a claim so that the court is aware of each item the plaintiff must sufficiently plead. Second, the court should identify the allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. These conclusions can take the form of either legal conclusions couched as factual allegations or naked [factual] assertions devoid of further factual enhancement. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an en-

---

[6] The Federal Rules of Civil Procedure are made applicable to the Superior Court by Superior Court Rule 7.

titlement of relief. If there are sufficient remaining facts that the court can draw a reasonable inference that the defendant is liable based on the elements noted in the first step, then the claim is plausible.

*Joseph v. Bureau of Corrections*, 54 V.I. 644, 649-50 (2011) (quoting *Santiago v. Warminster Tp*, 629 F.3d 121, 129-30 (3d Cir. 2010)) (internal quotations omitted). Therefore, the Court will first identify the elements of each claim contained in the Complaint,[7] then identify the allegations that are mere conclusions, and finally determine whether the well-pleaded factual allegations give rise to an entitlement of relief.

## A. PLAINTIFF'S RESPONSE WAS UNTIMELY UNDER THE COURT'S MAY 14, 2012 ORDER AND THE LOCAL RULES OF PROCEDURE

■ Practice and procedure in the Superior Court are governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the Local Rules of Civil Procedure of the District Court. SUPER. CT. R. 7. District Court Rule 12.1 governs dispositive motions filed pursuant to Federal Rule of Civil Procedure 12, and provides that "[a]ny party responding to a motion submitted under this Rule may file a response brief within twenty (20) days of the filing of the motion." LRCI 12.1(b). Rule 12.1 states that "[n]o party may amend the deadlines for the filing of motions or responses thereto if the Court has issued an order setting such deadlines." *Id.* at (c)(1). When the court has required an act to be done within a specified period of time, the court may, within its discretion and for cause shown, order the period enlarged if (1) application for enlargement is made before the expiration of the period originally extended by a previous order of the court or (2) a motion is made stating that the failure to act was the result of excusable neglect.

■ Here, the original motions to dismiss were filed on March 2, 2010 (Defendant Smalls) and March 26, 2010 (Defendant deJongh). Plaintiff filed a motion for extension of time to respond to Defendants' motions to

---

[7] The only laws cited in Plaintiffs Complaint are the Revised Organic Act of 1954 and the Restatement (Second) of Torts. The Complaint makes references to "fraud," "conspiracy," "illegal and fraudulent acts," abuses of position and authority, violations of Virgin Islands ethics and conflict of interest rules, and other "reprehensible" conduct justifying an award of punitive damages and reimbursement of all public funds spent on improving the Property. The Court was left to deduce the legal basis for many of the allegations in the Complaint.

dismiss, which was granted on April 21, 2010. Plaintiff was given until April 30, 2010 to respond to the motions. On May 12, 2010, Plaintiff had still not responded to the motions to dismiss notwithstanding the April 21, 2010 court order. Plaintiff requested an additional extension until May 21, 2010 to file a response. On May 14, 2012 Plaintiff still had not filed a response to the motions to dismiss, but the Court extended the period of time for Plaintiff to respond by giving Plaintiff twenty (20) days to file a response despite the fact that Plaintiff had not filed a response in the over two years since the motions were filed. Plaintiff finally filed a response dated June 6, 2012, but it was not filed until June 13, 2012. According to date on the response and the date stamp indicating when the response was filed with the court. Plaintiff's response was not timely filed according to the computation of time formula provided by Superior Court Rule 9. However, given the intense public interest in this case and to ensure the integrity of the Court's decision, Plaintiffs arguments presented in the response will be considered and addressed herein.

## B. GOVERNOR'S OFFICIAL RESIDENCE UNDER THE REVISED ORGANIC ACT OF 1954

Section 11 of the Revised Organic Act of 1954 provides that "[t]he Governor shall maintain his official residence in the Government House on Saint Thomas during his incumbency . . . ."[8] The Complaint alleges that Defendant deJongh violated Section 11 by choosing to reside in his personal residence located on the Property rather than in the Government House. (Compl. 22.) Plaintiff contends that Defendant deJongh "blatantly violate[d]" the "legal requirement that the Governor shall maintain his official residence in the Government House on St. Thomas during his incumbency" by "resid[ing] at his personal residence instead of at Government House on St. Thomas in order to perpetuate a fraud on the people of the Virgin Islands" and to "justify the illegal expenses and costs that would be spent on this property under the guise of his security." (Compl. ¶¶ 22-24.) Defendant deJongh's Motion to Dismiss argues that there is a distinction between a public official's "actual" and "official" residences, and Section 11 of the Revised Organic Act of 1954 ("Revised

---

[8] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1994), *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (1995 & Supp. 1997) (preceding V.I. CODE ANN. tit. 1).

Organic Act") does not obligate the governor to make Government House his actual residence or domicile — only his official residence. Thus, the issue becomes whether the Section 11 requirement that the governor maintain his official residence on St. Thomas during his incumbency also requires the territory's Governor to actually reside in Government House.

Each of the states in the United States provides an official residence for its top executive official, the governor.[9] However, Defendant deJongh argues that it is becoming increasingly common for state governors to choose not to reside in the homes, which are owned and maintained by the government and are often referred to as "governor's mansions."[10] Many states have statutes designating the location of the governors mansion and authorizing the use of state funds for care and maintenance of the property.[11]

Secondary sources suggest that the purpose of these official residence statutes is to specify the proper venue in which to bring suit against a public official.[12] These statutes simplify the proper venue analysis, since a public officer may have a primary office in the seat of government, an actual residence in another jurisdiction, and the actions that are the subject of the suit could theoretically have occurred in or affected every jurisdiction in the state. By statutorily providing an official residence for the public official, the public official is spared the possibility of being required to litigate cases across the state and the courts are provided clear instructions on the appropriate venue for lawsuits against the public official. Although the proper venue problem is exacerbated in large states that have many different local court districts, the two districts in the Virgin Islands are separated by forty miles of sea, and allowing the governor to be subject to suit in the St. Croix district when the seat of government is

---

[9] *See generally* D.C. CODE § 1-331.01 (3) (2001).

[10] *See generally* Jodi Kantor, *When Governors Reject the Mansions*, N. Y. Times, Apr. 11, 2012; Matthew Dolan, *No Thanks. No Mansion for Me. Say More Governors-to-Be*, The Wall Street Journal, Dec. 30, 2010.

[11] *E.g.* ALA. CODE § 36-13-6 (1975); ARK. CODE ANN. § 22-3-801 (1987); CAL. GOV. CODE § 8173 (West 1977); CONN. GEN STAT. § 3-10 (2011); IDAHO CODE ANN. § 67-808c (1987); KY. REV. STAT. ANN. § 11.020 (West 1958); LA. REV. STAT. ANN. § 208 (1956); MICH. COMP LAWS ANN. § 24 (1963); N.Y. EXEC. LAW § 3 (Consol. 2002); N.C. GEN. STAT. § 147-10 (2011); PA. STAT. ANN. § 1707.4 (1969); UT. CODE ANN. § 67-1-9 (West 1977).

[12] *See generally* 63C AM. JUR. 2D *Public Officers and Employees* § 384 (2012); C.R. McCorkle, *Venue of Actions or Proceedings Against Public Officers*, 48 A.L.R. 2d 423 (1956).

in the St. Thomas/St. John district would make litigation expensive and inconvenient for the government.

Section 11 of The Revised Organic Act is not entirely clear as to whether the governor of the territory must actually reside at Government House on St. Thomas or whether the "official residence" provision is provided to clarify that venue for suits against the governor is proper only in the District of St. Thomas. The Court can easily speculate justifications for both arguments and no legislative history sheds light on the true intent of Congress in enacting Section 11. However, in ruling on the 12(b)(6) motion, the Court must view all well-pleaded factual allegations in the complaint in the light most favorable to the plaintiff. *Maio*, 221 F.3d at 481. Therefore, for the purpose of ruling on the 12(b)(6) motion, the Court will accept as true Plaintiff's allegation that Section 11 of the Revised Organic Act requires the Governor of the Virgin Islands to actually reside at Government House on St. Thomas during his incumbency.

Taking the facts alleged in the Complaint as true, Defendant deJongh has violated Section 11 of The Revised Organic Act by choosing to reside in his personal residence rather than at Government House during his incumbency. However, the alleged violation of the Revised Organic Act merely provides the basis for the actual causes of action listed in the Complaint — Plaintiff does not seek monetary damages based solely on the alleged Section 11 violation. (*See* Compl. ¶¶ 50-55.) For Plaintiff's action to proceed, there must be an allegation in the Complaint for which monetary damages are a sufficient remedy and the underlying well-pleaded facts present a plausible claim for relief. *Joseph*, 54 V.I. at 649-50.

## C. TAXPAYER STANDING UNDER THE VIRGIN ISLANDS CODE

■ Plaintiff specifies in the Complaint that he is suing as "a . . . taxpayer and . . . resident" of the Virgin Islands and that "the people of the Virgin Islands are entitled to an award of punitive damages in addition to reimbursement of all monies that were spent on [the Property]." (Compl. 1, 7.) Although no Virgin Islands Code sections are cited in the Complaint, these allegations imply that Plaintiff is proceeding under Title 5, Section 80 of the Virgin Islands Code, This section, titled "Taxpayers' suits." entitles a Virgin Islands taxpayer to "maintain an action to restrain illegal or unauthorized acts by a territorial officer or employee, or the

wrongful disbursement of territorial funds." 5 V.I.C. § 80; *see also Smith v. Gov't of the V.I.*, 329 F.2d 131, 133, 4 V.I. 489 (3d Cir. 1964). "Such suits are freely entertained at common law in most of the states and territories and serve a very useful public purpose in keeping within legal bounds the actions of government officers, especially in dealing with the public property and funds." *Smith*, 329 F.2d at 133.

■ To sustain a taxpayer suit under Title 5, Section 80, a plaintiff must show: (1) that he is a Virgin Islands taxpayer; and (2) that territorial funds were wrongfully disbursed. *Id.* Plaintiff does not need to show any actual or particularized injury to himself to recover under Title 5, Section 80. *See id.* at 133-35 (explaining that a Section 80 plaintiff need not show that he paid a minimum amount of Virgin Islands taxes, that the alleged misconduct involved public funds to which the tax payments contributed, or any "special damage to himself different in character from that suffered by the general body of taxpayers"); *see also Donastorg*, 45 V.I. at 270 ("The Legislature of the Virgin Islands enacted standing upon taxpayers, without the demonstration of a particularized injury, pursuant to [Section] 80."). Normally, relief under Title 5, Section 80 takes injunctive form, but a court may also issue a declaratory judgment and/or coercive order as a remedy. *Holmes v. Gov't of the V.I.*, 370 F. Supp. 715, 717, 10 V.I. 365 (D.V.I. 1974).

■ Here, Plaintiff has asserted that he is a Virgin Islands taxpayer. (Compl. ¶ 2.) Plaintiff has alleged that territorial funds were wrongfully disbursed. (Compl. ¶ 52.) However, Plaintiff sued each of the Defendants in their "individual capacit[ies] only." (Compl. 1-2.) The text of the statute specifies that it applies to "acts by a territorial officer or employee," and the editor's note to the section reiterates that "a taxpayer may maintain an action to restrain . . . acts by a territorial officer or employee." 5 V.I.C. § 80; *see also Berne Corp. v. Gov't of the V.I.*, 120 F. Supp. 2d 528, 535 (D.V.I. 2000). The Court does not believe this statute was intended to allow taxpayers to hold individuals personally liable for actions taken while in public office. Rather, the plain language of the statute indicates that its purpose is to *prevent* alleged unauthorized, illegal, or wrongful actions or disbursements by public officials. *See* 5 V.I.C. 80 ("A taxpayer may maintain an action to *restrain* illegal or unauthorized acts by a territorial officer or employee . . . ." (emphasis added)); *see Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992) "[C]ourts must presume that a

39

legislature says in a statute what it means and means in a statute what it says there,"); *see also People v. Baxter*, 49 V.I. 384, 389 (2008). This interpretation is supported by Virgin Islands case law. The *Holmes* court held that the normal relief in taxpayers' suits is an injunction, which may be accompanied by a declaratory judgment. *Holmes*, 370 F. Supp. at 717. Since Title 5, Section 80 only allows taxpayers to restrain the actions of public officials and Plaintiff seeks damages from Defendants as individuals for conduct that has already occurred, Plaintiff's claim cannot proceed under a Title 5, Section 80 theory of liability.[13]

## D. 42 U.S.C. § 1983 CIVIL ACTION FOR DEPRIVATION OF RIGHTS

 The next plausible cause of action implied by the Complaint and addressed in Defendant Smalls' Motion to Dismiss is a civil rights action under Title 42, Section 1983 of the United States Code ("Section 1983"). Section 1983 allows a person to bring a suit against a public official in an individual capacity for the deprivation of any rights, privileges, or immunities secured by the Constitution and federal law. 42 U.S.C. § 1983. Under Section 1983, state officers may be held personally liable even for "official" actions taken while in public office. *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Territorial officers, when sued in their official capacities, are not subject to Section 1983 liability. *Ngiraingas v. Sanchez*, 495 U.S. 182, 110 S. Ct. 1737, 109 L. Ed. 2d 163 (1990). However, when a territorial officer is sued in his or her individual capacity, the officer can be subject to a Section 1983 claim. *See, e.g., Int'l Islamic Comty. of Masjid Baytulkhaliq, Inc. v. U.S.*, 981 F. Supp. 352, 371-72, 37 V.I. 287 (D.V.I. 1997). Since the Complaint specifies that each of the Defendants is being sued in his or her individual capacity only, the Defendants are subject to Section 1983 liability.

 However, the Complaint must still sufficiently plead the elements of a Section 1983 cause of action to survive the motions to dismiss. *Joseph*, 54 V.I. at 649-50. The two essential elements of a Section 1983

---

[13] Importantly, Plaintiff also clarified in the response that the action "is not a taxpayer suit pursuant to 5 V.I.C. § 80." (Resp. 4.) However, since Plaintiffs Complaint was filed *pro se*, the Court feels it necessary to include the discussion in Part C to clarify that Plaintiffs Complaint does not state a claim for which relief can be granted pursuant to Title 5, Section 80 of the Virgin Islands Code. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (providing that allegations from *pro se* complainant must be liberally construed).

cause of action are: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See, e.g., Kost v. Kozakiewicz,* 1 F.3d 176, 184 (3d Cir. 1993) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981)). The Complaint sufficiently pleads the first element of a Section 1983 action by repeatedly alleging that Defendants abused the authority of their official positions to defraud the people of the Virgin Islands. (*See* Compl. ¶¶ 23, 26, 27, 28, 31, 33, 42, 45, 53.)

Regarding the second element of a Section 1983 claim, the Complaint alleges that Defendants conspired to violate (1) Section 11 of the Revised Organic Act of 1954, which is codified in Title 48 of the United States Code at Section 1591; (2) Virgin Islands conflict of interest laws; and (3) Virgin Islands tort laws of fraud, conversion. and punitive damages. The question is whether Plaintiff has alleged any "deprivation of rights, privileges, or immunities" secured by the Constitution or federal law by invoking these statutes. 42 U.S.C. § 1983. Section 1983 imposes liability for violations of constitutional rights, not for violations of tort law. *Baker v. McCollan.* 443 U.S. 137. 146, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). Additionally, the Virgin Islands conflict of interest laws are not the basis for constitutional rights and are not United States law. Therefore, the only relevant claim for purposes of the Section 1983 discussion is the alleged violation of Section 11 of the Revised Organic Act, which is codified in Title 48 of the United States Code at Section 1591.

The mere existence of a federal law does not by itself support a Section 1983 cause of action to remedy its violation. *Berne,* 120 F. Supp. 2d at 534 (citing *Maine v. Thiboutot,* 448 U.S. 1,4, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980)). The statute in question must not merely declare policy — it must create enforceable rights. *Id.; see also Pennhurst State School and Hosp. v. Halderman,* 451 U.S. 1, 19, 101 S. Ct. 1531, 67 L. Ed. 2d 694 (1981). The Supreme Court of the United States articulated a three-part test to determine whether a statute creates enforceable rights. *See Golden Slate Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 110 S. Ct. 444, 107 L. Ed. 2d 420 (1989). First, the federal statute in question must create an obligation binding on a government unit. *Id.* at 106 (citing *Pennhurst,* 451 U.S. at 19). Second, the plaintiffs interests

must be sufficiently specific to be judicially enforceable. *Id.* (citing *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 431-432, 107 S. Ct. 766, 93 L. Ed. 2d 781 (1987)). Third, the federal statute in question must be intended to benefit the plaintiff. *Id.*

█ Applying the three-part test to Section 11 of the Revised Organic Act reveals that the alleged statutory violation did not deprive Plaintiff of any rights, privileges or immunities guaranteed by the United States Constitution and does not meet the second element of the Section 1983 analysis. Section 11 does create a binding obligation on a government unit — the Governor — by employing the mandatory word "shall" in the language of the statute. *Berne*, 120 F. Supp. 2d at 534 (citation omitted). The second prong of the test has also likely been met as the Court could issue an order requiring the governor of the territory to reside in Government House during his incumbency. However, the third prong of the three-part test is not satisfied by the allegations in the Complaint. The well-pled allegations in the Complaint do not show how Section 11 of the Revised Organic Act was intended to benefit Plaintiff or Virgin Islands taxpayers in general. Indeed, a cogent argument could be made that Section 11 actually creates a burden on Virgin Islands taxpayers by allocating tax dollars to the maintenance and upkeep of Government House that could be distributed elsewhere in the territory. The Court finds it more likely that Section 11 was intended to benefit the Virgin Islands government by providing a single judicial district where the governor is subject to suit. *See supra* Part B.

The second element of Section 1983 requires the application of the three-part test to determine whether plaintiff was deprived of any rights, privileges, or immunities under color of state law. Here, the third prong of the test was not met since the Complaint does not show how Plaintiff was intended to benefit from Section 11 of the Revised Organic Act. The Complaint does not demonstrate what federal right Plaintiff was deprived of or how Plaintiff was deprived of that right under color of state law, Since the allegations in the Complaint do not support a reasonable inference that Defendant is liable under Section 1983, Plaintiff's claim cannot proceed under this theory of liability.

## E. VIRGIN ISLANDS ETHICS AND CONFLICT OF INTEREST LAWS

The Complaint also alleges that Defendants violated conflict of interest rules in order to improve Defendant deJongh's property at the expense of

the people of the Virgin Islands. (Compl. ¶ 42.) In the response, Plaintiff acknowledges that the Virgin Islands conflict of interest laws are enforced by the Attorney General, but since the Attorney General authored a legal opinion authorizing the use of public funds to improve the property, "the Attorney General cannot be expected to file a civil action to correct the illegal spending of public funds that he previously opined was legal." (Resp. 5.) Therefore, Plaintiff filed his suit "on behalf of the Attorney General" to "litigate this action in place of" the conflicted Attorney General. *Id.* Plaintiff asserts that this is a case of first impression in the Virgin Islands, and that Virgin Islands law does not prohibit a private citizen from filing suit to enforce the conflict of interest laws on behalf of the Attorney General. (Resp. 4, 6.)

The Virgin Islands conflict of interest laws are found in Title 3, Sections 1100-1108 of the Virgin Islands Code. These Code sections apply to the Governor, all elected territorial officials, all officers and employees of the executive branch, and all officers and employees of any public agency. 3 V.I.C. §§ 1101(4), (8). Section 1103 of Title 3 provides that

> [a] person subject to this chapter has an interest which is in substantial conflict with the proper discharge of his duties to the public interest and of his responsibilities as prescribed in the laws of the Virgin Islands or a personal interest . . . if he will derive a direct monetary gain . . . by reason of his official activity.

Section 1106 goes on to specify that the conflict of interest rules "shall be administered by the Attorney General of the Virgin Islands who shall . . . file actions in the appropriate courts when and as necessary to enforce its provisions." 3 V.I.C. § 1106. Violation of the conflict of interest laws is a criminal offense punishable by a fine and/or imprisonment. *See* 3 V.I.C. § 1108.

A private right of action is the right of an individual to bring suit to remedy or prevent an injury resulting from an actual or threatened violation of a legal requirement. *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 296 (3d. Cir. 2007). While it is true that the Virgin Islands conflict of interest laws do not expressly prohibit a private right of action, they also do not expressly permit one. *See* 3 V.I.C. §§ 1100-1108. Many statutes provide an express private right of action in the language of the statute itself, but the Virgin Islands conflict of interest laws do not; enforcement

of the conflict of interest laws is expressly reserved for the Attorney General of the Virgin Islands. *See Id.* Some statutes, however, contain an implied private right of action where there is no express language conferring that right.

 In the Third Circuit, the test for whether a statute creates an implied right of action is found in the Supreme Court of the United States decision *Alexander v. Sandoval* 532 U.S. 275, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001 ).[14] The relevant inquiry involves two steps. First, the text and structure of the statute must be examined to determine whether the legislature intended to create a personal right. Second, the text, structure, and legislative history of the statute must be examined to determine whether the legislature intended to create a private remedy. *Wisniewski v. Rodale. Inc.*, 510 F.3d 294 (3d Cir. 2007) (citing *Sandoval*, 532 U.S. at 286; *Three Rivers Ctr. v. Hous. Auth. of the City of Pittsburgh*, 382 F.3d 412, 421 (3d Cir. 2004). If the legislature intended to create a personal right and a private remedy then an implied private right of action exists under the statute. *Id.*

 First, the text and structure of the statute must be examined for "rights-creating language" that focuses on the "individual protected" rather than the "person regulated." *Id.* (quoting *Sandoval*, 532 U.S. at 288-89). Statutes that focus on the person regulated confer no implication of a private right of action. *Sandoval*, 532 U.S. at 290. Title 3, Section 1100 is entitled "Declaration of policy," and states "[f]he Legislature finds and declares: [that] the people have a right to expect adherence by those who conduct the public business to the principle that all officials must act with the utmost integrity, absolute impartiality, and loyalty to the public interest." 3 V.I.C. § 1100. "However. the mere mention of 'rights' does

---

[14] Although this test applies specifically to federal laws, the District Court of the Virgin Islands has applied the *Sandoval* test to the Virgin Islands Code to determine whether a private right of action exists. *Speaks v. Gov't of the V.I.*, No. 2006-168, 2009 U.S. Dist. LEXIS 3565 (D.V.I. Jan. 14, 2009). In *Miller v. Virgin Islands Horn. Auth.*, 46 V.I. 623 (D.V.I. 2005), the District Court applied a different test, but cited the *Sandoval* line of U.S. Supreme Court cases when examining two Virgin Islands Code sections for an implied private right of action. Two years later, *Wisniewski* clarified that *Sandoval* provides the relevant test for the Third Circuit. These two District Court cases, although unreported, are instructive to this Court and imply that *Sandoval* is the correct test to apply to determine whether an implied private right of action exists in a Virgin Islands Code section. Additionally, the Court found no Virgin Islands case law suggesting that a different test should be applied to Virgin Islands Code sections.

not, without more, establish a private right of action." *McGovern v. City of Philadelphia*, 554 F.3d 114 (3d Cir. 2009) (citing *Wisniewski*, 510 F.3d at 303). The rest of the conflict of interest laws focus exclusively on the persons to be regulated. *See* 3 V.I.C. §§ 1101-1108. Additionally, statements of policy or practice do not contain the requisite congressional intent to create a private right of action. *See Gonzaga University v. Doe*, 536 U.S. 273, 288, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002). The only mention of rights in the conflict of interest laws is contained in the section titled "Declaration of policy." 3 V.I.C. § 1100.

██ ██ Next, the text and structure of the statute must be examined to determine whether the legislature intended to create a private remedy. An express provision of one method of enforcing a substantive rule suggests that the legislature intended to preclude other methods of enforcement. *Sandoval*, 532 U.S. at 290. Similarly, "the existence of a comprehensive remedial scheme in the statute" implies that no private right of action exists outside of the method articulated by the legislature. *Wisniewski*, 510 F.3d at 303. Title 3, Section 1106 specifies how the Virgin Islands conflict of interest laws are enforced. Section 1106 uses mandatory language, stating that the conflict of interest laws "shall be administered by the Attorney General of the Virgin Islands, who shall . . . file actions in the appropriate courts when and as necessary to enforce its provisions." This comprehensive enforcement mechanism suggests that the legislature intended to preclude other methods of enforcement, including a private right of action. *Sandoval*, 532 U.S. at 290.

Plaintiff argues that the Complaint should be "interpreted as being filed on behalf of the Attorney General, who is authorized by law to file such actions on behalf of the People of the Virgin Islands." (Resp. 4-5.) Since the Attorney General authored a legal opinion authorizing the use of public funds for the security improvements to the Property, the Attorney General "cannot be expected to file a civil action to correct the illegal spending of public funds that he previously opined was legal." (Resp. 5.) This, Plaintiff implies, would leave the people of the Virgin Islands with no remedy for the improper expenditures. Therefore, Plaintiff should be permitted to litigate the case in place of the Attorney General. *Id.*

██ The problem with Plaintiff's argument is that it is unsupported by Third Circuit and United States Supreme Court case law. The clear precedent set by *Sandoval* and *Wisniewski* require that in order for the right to exist, the text, structure, and legislative history of a statute must

45

provide indicia that the legislature intended to create an implied private right of action. *Sandoval*, 532 U.S. at 286; *Wisniewski*, 510 F. 3d at 303. Plaintiff has not provided any evidence that the legislature intended to create a private right of action in the conflict of interest statutes. Plaintiff does not discuss the text, structure, or legislative history of the statutes in either the Complaint or the Response to Defendants' Motion[s] to Dismiss. The Court, having examined the text and structure of the statutes, has concluded that the legislature did not intend to create such a right. The only conceivable basis for Plaintiff's argument is that, as a matter of public policy, the legislature would have intended for a private right of action when the Attorney General also has a conflict of interest. However, the Virgin Islands conflict of interest statutes contain an express enforcement mechanism, and

> [i]t is . . . an "elemental canon" of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies. In such cases, "[i]n the absence of strong indicia of contrary [legislative] intent, we are compelled to conclude that [the legislature] provided precisely the remedies it considered appropriate."

*Karahalios v. Nat'l Fed'n of Fed. Emps., Local 1263*, 489 U.S. 527, 533, 109 S. Ct. 1282, 103 L. Ed. 2d 539 (1989) (quoting *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979); *Middlesex Cnty. Sewerage Auth. v. Sea Clammers*, 453 U.S. 1, 15, 101 S. Ct. 2615, 69 L. Ed. 2d 435 (1981)).

The Court, having examined the text and structure of the statute, finds no such indicia in the Virgin Islands conflict of interest laws. The Virgin Islands conflict of interest laws do not contain "rights-creating language," focus almost exclusively on the persons being regulated and not the individuals protected, and contain a comprehensive enforcement method entrusted to the Attorney General of the Virgin Islands. Plaintiff has not provided any evidence of legislative intent to provide an implied private right of action in the Virgin Islands conflict of interest laws, much less the "strong indicia" required to displace the remedy provided in Title 3, Section 1106 of the Virgin Islands Code. *Karahalios*, 489 U.S. at 533. On its own examination, the Court found no indication that the legislature intended to create an implied private right of action.

██ Since the text and the structure of the conflict of interest statutes do not indicate that the legislature intended to create a private right or a personal remedy, the Court finds that the Virgin Islands conflict of interest laws do not confer a private right of action allowing individuals to litigate in the place of the Attorney General. Plaintiff has not stated a claim for which relief can be granted under the Virgin Islands conflict of interest laws because Title 3, Sections 1100-1108 of the Virgin Islands Code do not confer a private right of action to individuals.

## F. TORT CLAIMS OF FRAUD, CONVERSION, AND PUNITIVE DAMAGES

██ The Complaint further alleges that Defendants committed the torts of fraud and conversion and requests punitive damages. (Compl. ¶¶ 23, 26, 31, 33, 50, 53.) Section 2(b) of the Revised Organic Act grants government officers and employees immunity from tort actions when they are sued in their official capacities. However, Section 2(b) of the Revised Organic Act does not provide any immunity to government officers or employees who are sued in their individual capacities. *Davis v. Knud-Hansen Memorial Hosp.*, 635 F.2d 179, 186, 17 V.I. 623 (3d Cir. 1980); *Ocasio v. Bryan*, 374 F.2d 11, 6 V.I. 43 (3d Cir. 1967). Since the Complaint specifies that each Defendant is sued in his or her individual capacity only, Plaintiff has a possible claim for relief if the elements of the tort claims were sufficiently pled in the Complaint.

### 1. Fraud and Federal Rule of Civil Procedure 9(b)

██ Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") requires fraud allegations to be stated with particularity in the complaint. In the Third Circuit, Rule 9(b) requires a plaintiff to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it be acted upon; and (5) that the plaintiff acted or relied upon it to his damage or detriment. *Shapiro v. UJB Fin. Corp*, 964 F.2d 272, 284 (3d Cir. 1992); *see also In re Rockefeller Ctr. Props., Inc. Sec. Litig*, 311 F.3d 198, 216 (2002); *Fin. Trust Co., Inc. v. Citibank. N.A.*, 351 F. Supp 2d 329, 330, 46 V.I. 435 (2004). Courts should apply Rule 9(b) with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants. *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998).

 The Complaint fails to state how Plaintiff relied upon the allegedly false statements to his detriment, and therefore does not meet the particularity requirement contained in Rule 9(b). The false statements alleged in the Complaint were contained in the legal opinion prepared by Defendant Davis justifying the use of public funds to enhance security measures on the Property. (*See* Compl. ¶¶ 27-31.) The legal opinion allegedly provided the basis for the reprogramming of funds to be spent on the security improvements. (Compl. ¶ 31.) Plaintiff does allege that he, as a taxpayer, was *harmed* by the allegedly false statements, but the Complaint fails to show how Plaintiff or the taxpayers *acted* or *relied* on the false statements to their detriment. The Complaint alleges that other government officials relied upon the false statements in Defendant Davis's legal opinion, but does not state that Plaintiff relied upon the statements as required by the Third Circuit test for particularity under Rule 9(b). *Shapiro* 964 F.2d at 284. Having failed to state the allegation of fraud with the particularity required by Rule 9(b), Plaintiff's fraud claim must be dismissed.

### 2. Conversion

 The rules of the common law as expressed in the restatements of the law approved by the American Law Institute are the rules of decision in the courts of the Virgin Islands in the absence of local laws to the contrary. 1 V.I.C. § 4. The Restatement (Second) of Torts provides that conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel," RESTATEMENT (SECOND) OF TORTS § 222A (1965). This Court has accepted and followed the Restatement definition of conversion. *See Chase Manhattan Bank, N.A. v. Power Products, Inc.*, 27 V.I. 126, 128-29 (Terr. Ct. 1992).

 The Restatement definition of conversion requires an interference "with the right of another to control [a chattel] . . . ." RESTATEMENT (SECOND) OF TORTS § 222A (1965). Here, the chattel at issue is public funds contributed by Virgin Islands taxpayers. The problem with Plaintiff's claim for conversion is that Plaintiff has no right to control public funds once the taxes are collected. *See* 33 V.I.C. § 681 (providing that "[a]ll tax revenues collected by the [Virgin Islands Bureau of Internal Revenue] shall be deposited in the Treasury of the Virgin Islands"), Once

the tax revenues are deposited in the Treasury of the Virgin Islands, the government has the exclusive right to control and possession of the tax funds. Since Plaintiff has no right to control or possession of the public funds he alleges were misappropriated, the Complaint does not set forth a plausible claim for relief on the elements of conversion.

### 3. Punitive Damages

The Complaint requests "an award of punitive damages in addition to reimbursement of all monies that were spent on deJongh's private property." (Compl. ¶ 53.) A claim for punitive damages is not itself a cause of action, but is a remedy incidental to another cause of action, such as a tort. *McDonald v. Davis*, 51 V.I. 573, 607 (D.V.I. 2009). Thus, the Court must assume that Plaintiff's claim for punitive damages is based on the tort claims of fraud or conversion. Having already determined that the Complaint fails to sufficiently plead the elements of fraud or conversion. Plaintiff's claim for punitive damages must be dismissed. *See supra* Parts F(1), F(2).

## III. CONCLUSION

Plaintiff's Complaint does not state a claim for which relief can be granted by the Court. Plaintiff's Complaint was carefully scrutinized by the Court and the arguments in the response were addressed. Even when viewing the Complaint in the light most favorable to Plaintiff, the well-pleaded allegations do not set forth a plausible claim for relief on any of the potential causes of action suggested in the Complaint. The Complaint does not sufficiently plead the elements of a claim for relief under Title 5, Section 80 of the Virgin Islands Code; Title 42, Section 1983 of the United States Code; the Virgin Islands conflicts of interest laws; or the tort claims of fraud or conversion. The Complaint's deficiencies and failure to plead the elements of any conceivable cause of action leave the Court with no basis to allow the case to proceed. Accordingly, Defendants' motions to dismiss will be granted under separate Order of even date. Since the arguments contained in the motions to dismiss apply equally to all of the defendants, Plaintiff's Complaint will be dismissed with prejudice as to all Defendants.